UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

NOV 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IVAN FICKEN, individually, and as father and
best friend of and on behalf of CIPRIAN IVANOF,
his adopted son, as well as on behalf of ISAIA IVANOF,
Ciprian Ivanof's birth father, at the address of
2020-1/2 Second St.
Eau Claire, WI. 54703
Home Telephone: 715-855-1172
E-Mail Address: altruistic10@yahoo.com

      Plaintiffs,

vs.

AMR Corporation,
AMERICAN AIRLINES, INC.
AMR EAGLE HOLDING Corporation,
acting through its President of AAdvantage Marketing
Programs, KURT STACHE, and through its employees
or agents, BARRY ROBERTSON, and LISA NORRIS,
all of whom have an address of
4333 Amon Carter Blvd.
Ft. Worth, Texas 76155

      Defendants.

Case: 1:07-cv-02166
Assigned To : Urbina, Ricardo M.
Assign. Date : 11/30/2007
Description: Pro Se General Civil

**PLAINTIFFS' MOTION REQUESTING ASSIGNMENT OF COUNSEL
FROM THE PRO BONO PANEL FOR ABOVE CAPTIONED CASE**

In accordance with the criteria listed on the DC Federal District Court's website by which a Judge decides whether to appoint counsel, the following reasons are offered in support of this request.

1. **The nature and complexity of the action:** While the first two listed Plaintiffs are United States citizens of the State of Wisconsin, they are living in Romania in virtual "exile" as a result of actions taken by DC social workers and others of conspiracy to destroy Plaintiffs' familial relationship, negligent harassment, intentional infliction of emotional distress and forcing the first two of the listed Plaintiffs to leave their former residence in DC, as further explained in paragraphs 16 to 25 of the present Complaint

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
JAN 19 2006
NANCY MAYER-WHITTINGTON
U.S. DISTRICT COURT CLERK

IVAN FICKEN, individually, and as father and
best friend of and on behalf of CIPRIAN IVANOF,
his adopted son, as well as on behalf of ISAIA IVANOF,
Ciprian Ivanof's birth father, at the address of
Calea Grivitei, nr. 212
Bloc J, Sc. G, Ap. 9,
Sector 1, COD 783121
Bucharest, ROMANIA
Home Telephone: 40-21-665-6139
E-Mail Address: altruistic10@yahoo.com

CIVIL ACTION NO.

    Plaintiffs,

vs.

AMR Corporation,
AMERICAN AIRLINES, INC.
AMR EAGLE HOLDING Corporation,
acting through its President of AAdvantage Marketing
Programs, KURT STACHE, and through its employees
or agents, BARRY ROBERTSON, and LISA NORRIS,
all of whom have an address of
4333 Amon Carter Blvd.
Ft. Worth, Texas 76155

    Defendants.

**PLAINTIFFS' MOTION REQUESTING ASSIGNMENT OF COUNSEL
FROM THE PRO BONO PANEL FOR ABOVE CAPTIONED CASE**

In accordance with the criteria listed on the DC Federal District Court's website by which a

Judge decides whether to appoint counsel, the following reasons are offered in support of this

request.

1A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IVAN FICKEN, individually, and as father and
best friend of and on behalf of CIPRIAN IVANOF,
etal

    Plaintiffs,

vs.

AMR Corporation,
AMERICAN AIRLINES, INC.
AMR EAGLE HOLDING Corporation,
etal

CIVIL ACTION NO. MC06-0083(RMU)

RECEIVED
SEP 2 8 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### NOTICE OF CHANGE OF ADDRESS

Notice is hereby given that effective immediately, Plaintiffs' address should be changed to

    2020½ Second St.
    Eau Claire, WI. 54703

The Court and any Defendants are requested to send copies of any filings or notices to Plaintiffs at the above address. Plaintiffs phone no. is (715) 855-1172.

_____
Plaintiff Ivan Ficken, individually

_____
Plaintiff Ivan Ficken, for and on behalf of his
adoptive son, Plaintiff Ciprian Ivanof

1B

and their needing to find a "safe harbor" in Romania where they can be free of further social worker harassment, and the sheer fear of further social worker harassment which profoundly damaged their lives in the U.S. between 1998 and 2001. The third listed Plaintiff, Isaia Ivanof, is solely a citizen of Romania (and is the birth father of Ciprian Ivanof), is not fluent in English and is depending upon the first two of the listed Plaintiffs, to look out for his best interests in this cause of action, with Ficken and C. Ivanof helping to provide financial support to I. Ivanof, who is in a near destitute state, earning probably less than $100 per month, and wholly incapable of hiring any counsel to represent him, both for reasons of lack of funds as well as lack of English language fluency.

Although Plaintiffs expect to have to make one or more trips back to the U.S. for litigation purposes related to both this, and two other complaints which the first two of the listed Plaintiffs have filed in this Court, the nature and complexity of this action is such that, absent having local counsel representing their interests, they are not in a position of being able to afford the numerous trips necessary to make various court appearances which can be anticipated in filing an action of this nature, in addition to the other two causes of action they have pending in this Court. Furthermore, there are no English language legal research facilities of which Plaintiffs are aware or to which they would have access in Romania to enable them to competently handle this litigation *Pro Se* and Plaintiffs cannot afford subscribing to an on-line legal research service, which may be of limited use in any event for the legal research purposes which Plaintiffs would require to handle this litigation *Pro Se*. While only several weeks ago, C. Ivanof reached the age of majority of 18, as with most high school students, it is doubtful that he could easily live independently, he is not employed and is totally financially dependent upon Plaintiff Ivan Ficken, and probably will be for much of the foreseeable future, where it is C. Ivanof's intent to attend college in the U.S. either next school year or the year thereafter (depending upon his being allowed to return to the American International School of Bucharest [AISB], which has barred his return, solely in retaliation for Plaintiffs here holding AISB responsible in this Court for it's past practices of not allowing admission even in elementary school, to American students unable to afford stratospheric tuition, as well as AISB

2

operating a corrupt scholarship program that gives scholarships only to Romanians attending the local corrupt Romanian school system where grades are bought for bribes) although, by chance C. Ivanof's financial claim in this cause of action is probably more than double that of the other two parties put together. Thus, while C. Ivanof's interests are central to both this, as well as the other two causes of action which the first two of the Plaintiffs here have filed in this Court, the issues in this case are much more narrowly defined and the Defendant, essentially American Airlines, being a commercial entity, is probably more receptive to being able to work out a settlement, both because of the merits, the desire to avoid adverse publicity for their actions against Plaintiffs here (whereas the other two causes of action which Plaintiffs have filed in this Court involve predominantly government entities, not known for financial practicalities in litigation). For all practical purposes C. Ivanof deserves to continue being viewed as a minor child, needing the special consideration of the Court assigning counsel to protect his interests, while at the same time, the present cause of action bodes well for a simpler and more expeditious resolution of a more narrow issue, i.e. American Airlines theft or destruction of a huge and valuable block of Plaintiffs' frequent flyer mileage, which has substantial value and importance to Plaintiffs. In short, it is Plaintiffs' location in Romania without local counsel (who might be in a position to help easily resolve this case) that may well be the major stumbling block to it's resolution, given the Defendants' probable perception that Plaintiffs' location places them in an exceeding adverse litigation position, which augurs toward more easily being capable of finding counsel willing to expend a relatively smaller amount of time (in comparison with Plaintiffs' other cases), in exchange for potentially dramatically more favorable results for a kid who didn't deserve to have the prospect of years' worth of being able to make trips to Romania to help out his birth family arbitrarily stolen away from him.

2. **The Potential Merit of the *Pro Se* party's claims:** While Plaintiffs' claims involve a RICO conspiracy, breach of contract and tortious stealing or destruction of Plaintiffs' property, and with huge blocks of airline miles (what's at stake here is approximately half a million airline miles) being a virtual world currency, essentially the claims are very simple—American Airlines (AA) stole or destroyed a

3

huge block of Plaintiffs' airline miles, in contravention of their advertised (and personally promised by one of their customer service representatives) policy of transferring Plaintiffs' TWA mileage into AA's mileage accounts. It's a simple theft, embezzlement, destruction or whatever of Plaintiffs' property, and due to the clearly explained hurt and adverse consequences which this theft has upon Plaintiffs' lives, which were more than adequately explained in communications with AA, so the harm surpasses the limits of intentional infliction of emotional distress, which has caused more harm than even the economic loss of value of the airline miles, Plaintiffs have been severely hurt by it. Plaintiffs hold a well grounded belief that AA's actions are so outrageous, and so insensitive to the unique family relationships that C. Ivanof has with both his adoptive family and his birth family, that any jury will award substantial damages to Plaintiffs, almost regardless of what defenses AA plans on mounting.

3. **The Potential Merit of the Claims:** In this case, same answer as given for item No. 2. Plaintiffs tried virtually everything they could think of to convince AA to restore their destroyed mileage, which, in this day and age, deserves to be treated like cash or currency stolen from one's bank account, and which comprised a bank account of substantial value, made all the more reprehensible by the fact that the air miles were predominantly earned by C. Ivanof when he was a small child, and stolen from him while he was clearly a minor child. The probable world's largest and most profitable airline should not be trying to enhance its bottom line financial position by stealing airline mileage from a kid coming from destitute circumstances of a Romanian orphanage.

4. **The Demonstrated Inability of the *Pro Se* parties to retain counsel by other means:** Due to Plaintiffs' location in Romania which is not conducive to being able to try to encourage local counsel in Washington, DC to take this, or either of Plaintiffs' other two cases, it has been Plaintiffs' experience, in spite of talking to a number of different attorneys around the DC area, both while Plaintiffs still were living in the U.S. as well as following up on leads thereafter, that the vast majority of litigation specialists have enough well heeled clients willing to pay them by the hour that they have no need to incur the risk of contingency litigation. It is now close to two years since Plaintiffs' other first case was

filed, and Plaintiffs have experienced no progress in getting any litigator to express any interest in taking the case on a contingency basis. Given the somewhat simpler issues under consideration in the present case, a valid strategy might be that if Plaintiffs were given assigned counsel in this case, which led to a probable more rapid resolution of it, even prior to the time when their other two cases might become resolved, in the manner in which Plaintiffs could pull themselves up by their bootstraps in helping to resolve the other two cases, which have more complex issues. Plaintiffs are not in a queue, which the mere passage of time awaiting one's turn will cure. To the contrary, the mere passage of well over two years' time of trying to obtain counsel in the other two cases, proves the intractable nature of trying to obtain counsel in cases such as these. In spite of having virtually no access to any legal research materials, Plaintiffs have been able to keep the other two cases alive, by sheer force of logic, and almost no caselaw precedent, which is a measure of Plaintiffs' resolve and the fact that the original bases upon which the cases were filed was sound, had legitimate merit and should add credibility to this case rather than erroneously concluding that Plaintiffs are unduly litigious, which they are not. But the bottom line is that after several years of trying, Plaintiffs have not been able to retain counsel by other means, which is exacerbated by their geographic location in Romania.

5. **The Degree to which the Interests of Justice will be served by Appointment of Counsel, including the Benefit the Court may derive from the assistance of the Appointed Counsel:** Due to the awkward and inconvenient nature of Plaintiffs' location in Romania, the Court clearly would benefit from the assistance of Appointed Counsel in this case. While Plaintiffs have e-mail access and could by that means frequently, easily and rapidly confer with appointed counsel prior to any schedule court hearing, absent appointed counsel, even if the case were converted onto the Court's electronic court filing and case management system, Plaintiffs' positions under *Pro Se* representation on any particular point upon which the Court might schedule a hearing could not be handled via e-mail and Plaintiffs cannot afford making repetitive trips between Romania and Washington, DC, which the Defendants here, affiliated with the largest and most successful airline in the U.S., if not the world, can just jump on one of

5

their American Airlines flights for free (or even a competitor's flights for little additional cost, due to airlines providing nearly free reciprocity of courtesy free flights to airline industry employees) and travel almost anywhere for next to nothing. When American Airlines has already shown itself to be capable of stealing or destroying a destitute kid's hundreds of thousands of airline miles, there are few tactics which the Defendants here will not stoop to try to just further make life difficult for Plaintiffs. Logically, the Defendants here will rapidly learn to take advantage of asserting any number of frivolous reasons to force multiple and many preliminary hearings which would simply destroy Plaintiffs' financial position as a litigation tactic to force Plaintiffs to abandon their case. When the Defendants here have shown themselves capable of stealing and destroying a child's airline mileage, which is the virtual equivalent of money these days, the Court should be bothered enough by the occurrence of this to at least enable the issues to be fairly adjudicated with competent counsel who could easily make court appearances to protect Plaintiffs' position and stop Defendants from engaging in similar tactics of trying to improve their bottom line profitability through cunning and deceit concerning their marketing promotions of airline mileage.

Particularly here, where C. Ivanof, as a minor child, has already been brutally traumatized by the adverse actions of government officials (primarily the DC social workers), which brought about Plaintiffs' initial filing almost two years ago, and whose sense of justice and conception of a level of human decency (which he had heretofore taken for granted as being rights assured to Americans, by his adoptive father Plaintiff Ficken instilling a strong sense of justice in his upbringing) has been called into question by the actions of the defendants in the other two causes of action which Plaintiffs have filed, success at at least being able to get this case competently underway through the assignment of counsel, would mean a lot in terms of a redemption of C. Ivanof's sense of there being any justice in the world, at a time when his lifelong conceptions of this are still in a malleable enough state that it could make a difference to him for the rest of his life.

Due to the fact that this Complaint contains a RICO (Racketeer Influenced and Corrupt Organizations Act) claim for which treble damages and awarding of Plaintiffs' attorneys' fees is provided, an additional incentive to any *Pro Bono* assignment of counsel would be that it need not be viewed as strictly a *Pro Bono* assignment where a strong possibility exists that the Court would be able to award attorneys' fees to the Plaintiffs. Plaintiffs request that the Court give favorable consideration to this request to appoint counsel.

_____
Plaintiff Ivan Picken

_____
Plaintiff Ciprian Ivanof

_____
Plaintiff Isaia Ivanof