## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVAN FICKEN, CIPRIAN IVANOF, and ISAIA IVANOF, | |
| *Plaintiffs*, | |
| v. | No. 1:07cv02166 (RMU) |
| AMR CORPORATION, AMERICAN AIRLINES, INC., AMR EAGLE HOLDING CORPORATION, and KURT STACHE, each of whom has the address of 4333 Amon Carter Blvd., Fort Worth, Texas 76155, and BARRY ROBERTSON and LISA NORRIS, | DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) |
| *Defendants*. | |

## DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

Defendants AMR Corporation, American Airlines, Inc., AMR Eagle Holding

Corporation, and Kurt Stache[1] hereby move under Fed. R. Civ. P. 12(b)(6) for an order

dismissing Plaintiffs' Complaint on the ground that the allegations in the Complaint fail to state a

claim upon which relief can be granted.

Dated: January 18, 2008                Respectfully submitted,


                                        /s/ Wayne A. Schrader
                                        Wayne A. Schrader (D.C. Bar No. 361111)

---

[1] Although Counsel for the Moving Defendants also represents Defendants Barry Robertson and Lisa Norris in this matter, neither Mr. Robertson nor Ms. Norris has been served with the Summons and Complaint.  Accordingly, Mr. Robertson and Ms. Norris are not submitting any motion to the Court at this time, and do not waive any rights they may have to respond to the Complaint at a later date, if and when they are properly served.

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8556
Facsimile: (202) 530-9592

*Counsel for Defendants*
AMR CORPORATION,
AMERICAN AIRLINES, INC.,
AMR EAGLE HOLDING CORPORATION, and
KURT STACHE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IVAN FICKEN, CIPRIAN IVANOF, and ISAIA IVANOF,<br><br>     *Plaintiffs*,<br><br>v.<br><br>AMR CORPORATION, AMERICAN AIRLINES, INC., AMR EAGLE HOLDING CORPORATION, and KURT STACHE, each of whom has the address of 4333 Amon Carter Blvd., Fort Worth, Texas 76155, and BARRY ROBERTSON and LISA NORRIS,<br><br>     *Defendants*. | No. 1:07cv02166 (RMU)<br><br><br><br>DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

Page

I.    Introduction ............................................................................................................... 1

II.   Standard of Review ..................................................................................................... 1

III.  Analysis ...................................................................................................................... 2

      A.    RICO Claims .................................................................................................. 3

            1.    Existence of a distinct enterprise ......................................................... 5

            2.    Defendants' "operation or management" of the enterprise ..................... 7

            3.    Pattern of racketeering activity ............................................................ 7

                  a.    Predicate acts ............................................................................ 8

                  b.    Pattern ..................................................................................... 11

      B.    D.C.-Law Claims ........................................................................................ 12

            1.    Statute of limitations ......................................................................... 12

            2.    Legal insufficiency ........................................................................... 14

                  a.    Conversion ............................................................................... 15

                  b.    Intentional and negligent infliction of emotional distress ............ 17

                  c.    Breach of contract / promissory estoppel .................................... 19

                        i.    Breach of contract .......................................................... 20

                        ii.   Promissory estoppel ........................................................ 21

IV.   Conclusion ............................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*,
    495 F.3d 695 (D.C. Cir. 2007) ................................................................................ 13

*Bennett Enterprises v. Domino's Pizza*,
    45 F.3d 493 (D.C. Cir. 1995) ................................................................................... 3

*Bernstein v. Fernandez*,
    649 A.2d 1064 (D.C. 1991) ..................................................................................... 17

*Bingham v. Goldberg, Marchesano, Kohlman, Inc.*,
    637 A.2d 81 (D.C. 1994) ......................................................................................... 21

*Bradley v. NASD Dispute Resolution*,
    433 F.3d 846 (D.C. Cir. 2005) ................................................................................ 13

*Brown v. Argenbright Sec., Inc.*,
    782 A.2d 752 (D.C. 2001) ....................................................................................... 17

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) .............................................................................................. 4, 5

*Confederate Memorial Ass'n v. Hines*,
    995 F.2d 295 (D.C. Cir. 1993) .............................................................................. 4, 5

*Crowley v. North Am. Telcoms. Ass'n*,
    691 A.2d 1169 (D.C. 1997) ..................................................................................... 18

*Daisley v. Riggs Bank, N.A.*,
    372 F. Supp. 2d 61 (D.D.C. 2005) .......................................................................... 22

*Danielsen v. Burnside-Ott Aviation Training Center*,
    941 F.2d 1220 (D.C. Cir. 1991) ................................................................... 3, 4, 5, 9

*Duggan v. Keto*,
    554 A.2d 1126 (D.C. 1989) ............................................................................... 15, 16

*Duncan v. Children's Nat'l Med. Ctr.*,
    702 A.2d 207 (D.C. 1997) ....................................................................................... 18

*Ellipso, Inc. v. Mann*,
    460 F. Supp. 2d 99 (D.D.C. 2006) ............................................................................ 9

**Table of Authorities**
**(Continued)**

Page(s)

*Equity Group v. Painewebber Inc.*,
   839 F. Supp. 930 (D.D.C. 1993) ........................................................................... 15

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ............................................................................... 9

*Garwood Packaging, Inc. v. Allen & Co.*,
   378 F.3d 698 (7th Cir. 2004) ................................................................................ 23

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
   492 U.S. 229 (1989) ...................................................................................... 11, 12

*Hopkins v. Akins*,
   637 A.2d 424 (D.C. 1993) ..................................................................................... 21

*Hull v. Eaton Corp.*,
   825 F.2d 448 (D.C. Cir. 1987) ............................................................................... 13

*Kerrigan v. Britches of Georgetowne*,
   705 A.2d 624 (D.C. 1997) ................................................................................ 17, 18

*Moss v. Stockard*,
   580 A.2d 1011 (D.C. 1990) ................................................................................... 22

*Nashville Lodging Co. v. Resolution Trust Corp.*,
   59 F.3d 236 (D.C. Cir. 1995) ................................................................................ 23

*O'Callaghan v. District of Columbia*,
   741 F. Supp. 273 (D.D.C. 1990) ........................................................................... 15

*Osuchukwu v. Gallaudet Univ.*,
   296 F. Supp. 2d. 1 (D.D.C. 2002) ........................................................................... 2

*Primedical, Inc. v. Allied Inv. Corp.*,
   48 F.3d 1285 (D.C. Cir. 1995) ............................................................................... 16

*Prunte v. Universal Music Group*,
   484 F. Supp. 2d 32 (D.D.C. 2007) ........................................................................... 9

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .......................................................................................... 4, 7

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ................................................................................... 8

**Table of Authorities**
**(Continued)**

Page(s)

*Saunders v. Nemati*,
  580 A.2d 660 (D.C. 1990) ................................................................. 13

*Scheidler v. NOW*,
  537 U.S. 393 (2003) ........................................................................... 8

*Simard v. Resolution Trust Corp.*,
  639 A.2d 540 (D.C. 1994) ................................................................. 22

*Sisco v. GSA Nat'l Capital Fed. Credit Union*,
  689 A.2d 52 (D.C. 1997) ................................................................... 20

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ......................................................... 13

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ............................................................. 1

*United States v. DeFries*,
  129 F.3d 1293 (D.C. Cir. 1997) ......................................................... 10

*United States v. Lemire*,
  720 F.2d 1327 (D.C. Cir. 1983) ......................................................... 10

*United States v. Nardello*,
  393 U.S. 286 (1969) ........................................................................... 8

*United States v. Nedley*,
  255 F.2d 350 (3d Cir. 1958) ................................................................ 9

*United States v. Perholtz*,
  842 F.2d 343 (D.C. Cir. 1988) ............................................................. 6

*Vaccaro v. Andresen*,
  201 A.2d 26 (D.C. 1964) ................................................................... 20

*Western Assocs. Ltd. v. Market Square Assocs.*,
  235 F.3d 629 (D.C. Cir. 2001) ................................................. 1, 4, 8, 11

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*,
  883 F.2d 132 (D.C. Cir. 1989),
  *modified on other grounds*, 913 F.2d 948, 951 (*en banc*) (D.C. Cir. 1990) .............................. 5

**Table of Authorities**
**(Continued)**

Page(s)

*Statutes*

18 U.S.C. § 1961(1) ................................................................................................ 3, 7, 11

18 U.S.C. § 1961(1)(A) ................................................................................................ 7, 8

18 U.S.C. § 1961(1), (2), (4) ............................................................................................ 7

18 U.S.C. § 1961(4) ...................................................................................................... 4, 5

18 U.S.C. § 1961(5) ............................................................................................ 3, 7, 10, 11

18 U.S.C. § 1962(c) ............................................................................................... 3, 4, 6, 10

18 U.S.C. § 1962(d) ......................................................................................................... 4

18 U.S.C. § 1964(c) ......................................................................................................... 2

18 U.S.C. § 1341 ........................................................................................................... 7, 9

D.C. Code § 12-301(1), (10) ............................................................................................ 13

D.C. Code § 12-301(2), (3) .............................................................................................. 13

D.C. Code § 12-301(6) ..................................................................................................... 13

D.C. Code § 12-301(7) ..................................................................................................... 13

D.C. Code § 12-301(8) ..................................................................................................... 13

*Other Authorities*

Model Penal Code § 221.1 ................................................................................................. 8

Moore's Federal Practice – Civil § 9.03(1)(b) .................................................................... 9

Restatement (Second) of Contracts § 71 ............................................................................ 21

*Rules*

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

Fed. R. Civ. P. 9(b) ........................................................................................................... 8

## I.    Introduction

Mr. Ficken's Complaint alleges an ordinary dispute between an airline and one of its customers.  Mr. Ficken has chosen to employ the benefits of his legal education bring unfounded claims of racketeering, conversion, and infliction of emotional distress into what is, at best, a dispute under contract law—though a dispute between Mr. Ficken and a now-defunct TWA Airlines, whose statute of limitations has expired in any event.  Because Mr. Ficken's allegations fail to state any claim upon which relief can be granted, his Complaint must be dismissed.

## II.    Standard of Review

The Court will grant a motion to dismiss under Rule 12(b)(6) when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  Although in evaluating a motion to dismiss the Court will "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all reasonable inferences," the Court is "not bound to accept as true a legal conclusion couched as a factual allegation or to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal formatting and citations omitted); *accord Western Assocs. Ltd. v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) ("The court assumes that the factual allegations in the complaint are true, but it is not bound by the complaint's legal conclusions.").  Moreover, the Court will grant a motion to dismiss where the complaint itself precludes relief—that is, when a plaintiff "plead[s] himself out of court by alleging facts that render success on the merits impossible."  *Trudeau,* 456 F.3d at 193.

### III.    Analysis

As an initial matter, no claims but Mr. Ficken's are properly before this Court.  Mr.

Ficken does not purport to represent either Ciprian or Isaia Ivanof as an attorney, and neither

Ciprian nor Isaia Ivanof actually signed the Complaint: Mr. Ficken signed on behalf of each of

them.  (*See* Compl. at 58.)  The Complaint, however, establishes that Ciprian Ivanof is currently

over the age of majority in the District of Columbia—as a child who was "a little over two years

old" in "early 1990" (Compl. Attach. at 10), he must now be at least nineteen years of age.

Because a "plaintiff cannot bring an action on behalf of his children who were older than

eighteen, the age of majority in the District of Columbia," *Osuchukwu v. Gallaudet Univ.*, 296 F.

Supp. 2d. 1, 1 (D.D.C. 2002), Mr. Ficken can no longer bring an action on behalf of Ciprian

Ivanof.  Mr. Ficken does not assert any other legal disability that would allow him to act on

Ciprian Ivanof's behalf, nor any disability on the part of Isaia Ivanof—or, for that matter, any

*relationship* between himself and Isaia Ivanof—that would allow him to bring a claim on Isaia

Ivanof's behalf.  Accordingly, all claims purportedly brought by Ciprian and Isaia Ivanof must

be dismissed.[2]

Furthermore, although Mr. Ficken's claims against each Defendant are legally

insufficient, one Defendant stands out in this regard.  Defendant AMR Eagle Holding

Corporation does not appear to be specifically mentioned anywhere in the Complaint outside of

the background section, which simply describes AMR Corporation and American Airlines as

---

[2]  Should the Court hold that any of the claims purportedly brought by Ciprian or Isaia Ivanof
are properly before it, the Moving Defendants submit that all arguments regarding the failure
of the allegations in the Complaint to support the elements of Mr. Ficken's claims apply
equally to the claims of Ciprian and Isaia Ivanof.  For this reason as well, all claims brought
by Ciprian and Isaia Ivanof must be dismissed.

being "corporately affiliated with" AMR Eagle Holding Corporation.  (*See* Compl. ¶ 4.)  All claims against AMR Eagle Holding Corporation are therefore clearly unsupported by the allegations in the Complaint and must be dismissed, regardless of what the Court holds with respect to any of the other arguments submitted in support of this motion.[3]

Finally, Mr. Ficken's claims must fail even against those Defendants who are included in his allegations.  The claims in the Complaint fall into two groups: (1) violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–68 (2006) (Count I) and (2) various non-federal claims (Counts II–VIII).  Because Mr. Ficken has chosen to bring this action in the District Court for the District of Columbia, D.C. law governs the substantive aspects of the non-federal claims.  *See Bennett Enters. v. Domino's Pizza*, 45 F.3d 493, 497 (D.C. Cir. 1995) (noting that "District of Columbia law is treated as state law for purposes of the 'Erie Doctrine'").  Both the RICO claims and the D.C.-law claims are legally insufficient and must be dismissed.

## A.    RICO Claims

Mr. Ficken brings his RICO claims under 18 U.S.C. § 1964(c).  (*See* Compl. ¶¶ 72, 74.) Section 1964(c) creates a private right of action for anyone "injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c); *accord Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1224 (D.C. Cir. 1991).  Section 1962, in turn, prohibits "any person" from engaging in four distinct activities: (a) "us[ing] or invest[ing]" income derived from a pattern of racketeering activity in an enterprise; (b) "acquir[ing]" or

---

[3] Without waiving any separate rights or defenses that it might have, AMR Eagle Holding Corporation also submits that all defenses and arguments asserted on behalf of AMR Holding Corporation and American Airlines apply to it as well.

"maintain[ing]" control over an enterprise through a pattern of racketeering activity; (c) "conduct[ing] or participat[ing]" in "the conduct of [an] enterprise's affairs" through a pattern of a racketeering activity; or (d) conspiring to commit any of the first three violations.  *See* 18 U.S.C. § 1962(a)–(d).

In his complaint, Mr. Ficken alleges that all named Defendants (with the exception of AMR Eagle Holding Corp.), along with additional unnamed American Airlines employees, violated § 1962(c) and (d) by "conduct[ing], participat[ing] in, engag[ing] in, conspir[ing] to engage in, or aid[ing] and abett[ing], the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. Sec. 1961(1), 1961(5) and 1962(c) ." (Compl. ¶¶ 32, 34.)

Mr. Ficken's Complaint, however, fails to plead three of the elements required to maintain a RICO claim under § 1962(c): (1) the existence of a distinct enterprise, *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001); (2) that the Defendants participated in the "operation or management" of such an enterprise, *see Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); and (3) that such participation occurred through a pattern of racketeering activity, *Western Assocs. Ltd.*, 235 F.3d at 633.  *See also Danielsen*, 941 F.2d at 1231 (explaining that a plaintiff "must allege" these three elements); *Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 298 (D.C. Cir. 1993) (noting that a plaintiff must "plead the elements of a [RICO] violation" set forth in *Danielsen*); *Western Assocs. Ltd*, 235 F.3d at 632 (affirming dismissal of a civil RICO claim for "failure to allege a 'pattern of racketeering activity,' as required by § 1961(5) of the RICO Act").

Section 1962(d) of RICO, in turn, is purely derivative, "add[ing] nothing substantive to the law," *Danielsen*, 941 F.2d at 1232, and therefore Mr. Ficken's failure to plead the elements

of a substantive RICO violation—either as fact or as the object of an agreement—requires

dismissal of his § 1962(d) claims as well.  *See id.* (dismissing a § 1962(d) claim where plaintiffs

failed to allege a violations of § 1962(a), (b), or (c)); *Confederate Memorial Ass'n*, 995 F.2d at

299 ("A violation of 18 U.S.C. § 1962(d) can also be actionable, but that section outlaws

conspiracies to violate the other three sections and creates no new substantive offense.").

Accordingly, Count I of the Complaint must be dismissed.

     **1.      Existence of a distinct enterprise**

     In order to maintain a claim his claim under § 1962(c), Mr. Ficken must allege the

existence of a RICO "enterprise," *see Danielsen*, 941 F.2d at 1231, defined as including "any

individual, partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  It is a "basic

principle that to establish liability under § 1962(c) one must allege and prove the existence of

two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

referred to by a different name."  *Cedric Kushner Promotions*, 533 U.S. at 162.  This same

distinctive-enterprise requirement also precludes using vicarious liability to hold an enterprise

responsible under § 1962(c) for the actions of RICO defendant–employees.  *See Yellow Bus

Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132 (D.C. Cir. 1989)

(holding that "the concept of vicarious liability is directly at odds with the Congressional intent

behind § 1962(c)"), *modified on other grounds*, 913 F.2d 948, 951 (*en banc*) (D.C. Cir. 1990)

(noting that "[l]ogic alone dictates that one entity may not serve as the enterprise and the person

associated with it because, as Judge Posner of the Seventh Circuit has stated, 'you cannot

associate with yourself.'")

     Mr. Ficken alleges that "Barry Robertson, Lisa Norris, Kurt Stache (or his predecessor)

and others, presently indeterminate, and AMR Corporation and American Airlines, Inc.,

constituted an 'enterprise' within the meaning of" § 1961(4). (Compl. ¶ 34.) Taken at face value, this alleged enterprise includes all alleged RICO Defendants (*see* Compl. ¶¶ 32, 34) and therefore precludes recovery from any of them.

Furthermore, even if the Court were inclined to look beyond Mr. Ficken's chosen definition of "enterprise," the facts alleged in the Complaint significantly constrain which *subsets* of the five named entities could constitute a RICO enterprise. A RICO enterprise that is not a legal entity must be an "association-in-fact," which "is established by (1) a common purpose among the participants, (2) organization, and (3) continuity." *United States v. Perholtz*, 842 F.2d 343, 362 (D.C. Cir. 1988) (D.C. Cir. 1988) (internal citations and formatting omitted). In light of these requirements, AMR Corporation and American Airlines are *indispensable* to any plausible association-in-fact: the only common purpose, organization, or continuous relationship among any of the Defendants stemmed from their affiliation with AMR Corporation (the owner of American Airlines, which in turn employed Barry Robertson, Lisa Norris, and Kurt Stache). Because AMR Corporation and American Airlines are necessary to any RICO enterprise, they are therefore ineligible to be RICO Defendants.

Nor can Mr. Ficken cure this ineligibility by simply repleading his Complaint: *nothing* in the allegations suggests that any of the three individuals Defendants even knew each other, much less formed an association-in-fact characterized by a common purpose, organization, and continuous relationship independent of their affiliation with American Airlines. *See id.* at 363 ("The same group of individuals who repeatedly commit predicate offenses do not necessarily comprise an enterprise. An extra ingredient is required: organization."). Because the only possible RICO enterprise in Mr. Ficken's Complaint necessarily comprises AMR Corporation and American Airlines, the RICO claims against these defendants must be dismissed. At most,

the distinct-enterprise requirement leaves only Kurt Stache, Barry Robertson, and Lisa Norris as potential RICO defendants.

### 2.    Defendants' "operation or management" of the enterprise

Section 1962(c) prohibits "conduct[ing] or participat[ing]" in "the conduct of [an] enterprise's affairs" through a pattern of a racketeering activity. 18 U.S.C. § 1962(c). Based on this language, the Supreme Court has held that, in order to be liable under § 1962(c), a defendant must actually have participated in the "operation or management" of the alleged enterprise in connection with the alleged pattern of racketeering activity. *See Reves*, 507 U.S. at 179.

As discussed above, Mr. Ficken's Complaint cannot support the existence of any enterprise independent of American Airlines and AMR Corporation, which leaves only the three individuals—Kurt Stache, Barry Robertson, and Lisa Norris—as potential RICO defendants. Nor can the Complaint support an inference that any of these three individuals participated in the "operation or management" of AMR Corporation or American Airlines in connection with any alleged pattern of racketeering activity. Mr. Ficken does not even allege that Kurt Stache was an employee of American Airlines or AMR Corporation during the time period when the events described in the Complaint took place, much less that he had any role in the "operation or management" of the enterprise in connection with any of the alleged events. (*See* Compl. ¶¶ 5, 34.)   As a result, the RICO claims against the American Airlines employees—like the RICO claims against AMR Corporation and American Airlines—must also be dismissed.

### 3.    Pattern of racketeering activity

The RICO Act defines "racketeering activity" to include a variety of criminal acts (or "predicate acts") punishable under federal or state law, where the term "state" includes the District of Columbia. *See* 18 U.S.C. § 1961(1), (2), (4); *see also Confederate Memorial Ass'n*, 995 F.2d at 299 (referring to acts of racketeering activity under § 1961(1) as "predicate act[s]").

7

A "pattern of racketeering activity" must involve two or more predicate "acts of racketeering activity" occurring within ten years of each other, *see* 18 U.S.C. § 1961(5), where such predicate acts are characterized by "relatedness and continuity."  *Western Assocs. Ltd.,* 235 F.3d at 633. Mr. Ficken fails to sufficiently allege either a single predicate act or a pattern of such acts, and for this reason alone his RICO claims must be dismissed.

### a.     Predicate acts

In his Complaint, Mr. Ficken alleges state-law robbery as a RICO predicate act, as well as mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.  (*See* Compl. ¶¶ 29, 31).  Neither of these crimes are adequately pled.

### i.     Robbery

Mr. Ficken's Complaint does not support an inference that any defendant committed the RICO predicate act of robbery against him.  In order to qualify as a RICO predicate act under § 1961(1)(A), an act of "robbery" must be "chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).  Regardless of how the act is labeled or classified under the laws of any given state, it must "be capable of being generically classified as" constituting robbery.  *See Scheidler v. NOW*, 537 U.S. 393, 409 (2003) (applying this test to the § 1961(1)(A) predicate act of "extortion"); *see also Rose v. Bartle*, 871 F.2d 331, 362 (3d Cir. 1989) ("[T]he inquiry is not the manner in which States classify their criminal prohibitions but whether the particular state involved prohibits the extortionate activity charged.") (quoting *United States v. Nardello*, 393 U.S. 286, 295 (1969), which construed an analogous provision of the Travel Act).  Courts will generally look to the Model Penal Code when determining the "generic" definition of a § 1961(1)(A) crime.  *See Scheidler*, 537 U.S. at 409 (looking to the Model Penal Code to determine whether "an act prohibited under state law fell within a generic definition of extortion") (citing *Nardello*, 393 U.S. at 296).  The Model

Penal Code defines "robbery" as, "in the course of committing a theft," doing any of the following: "(a) inflict[ing] serious bodily injury upon another; (b) threaten[ing] another with or purposely put[ting] him in fear of seriously bodily injury; or (c) commit[ting] or threaten[ing] immediately to commit any felony of the first or second degree." Model Penal Code § 221.1; *accord United States v. Nedley*, 255 F.2d 350, 355 (3d Cir. 1958) (holding that, as at common law, "the gist of robbery is larceny by force") (quoting).

Even assuming that Mr. Ficken's Complaint is sufficient to allege a "theft" of his TWA frequent flier miles, Mr. Ficken does not allege that any defendant harmed or threatened him, nor does he allege *any* crime distinct from the alleged theft itself. Mr. Ficken cannot allege a violation of RICO simply by invoking the term "robbery" in his Complaint.

### ii.    Mail and wire fraud

Mr. Ficken's Complaint also fails to sufficiently allege any predicate act of mail or wire fraud. When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For allegations of fraud, this requires that, at a minimum, a plaintiff state the "time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996), as well as "the identity of the person who made the fraudulent statement." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 105-106 (D.D.C. 2006) (citing 2-9 Moore's Federal Practice – Civil § 9.03(1)(b)). This heightened pleading requirement applies to allegations of fraud as RICO predicate acts just as it does to ordinary allegations of fraud. *See Danielsen*, 941 F.2d at 1229; *see also Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) ("This heightened pleading standard is applicable to civil RICO claims such as those asserted here.").

With respect to fraud, Mr. Ficken alleges only that "a civil RICO claim should be actionable by virtue of AA's claimed inability to transfer Plaintiffs' TWA mileage to an AA mileage account, in actuality, being a fraudulent excuse in claiming that they 'can't' when in fact AA simply doesn't want to."  (Compl. ¶ 31.)  His Complaint fails to precisely identify what statement was made, when it was made, or who made it, and therefore fails to plead mail or wire fraud with the particularity required under Rule 9.

Furthermore, to the extent that Mr. Ficken bases his mail and wire fraud allegations on communications from Barry Robertson or Lisa Norris in 2004—the fact that this is unclear (*see* Compl. ¶¶ 28, 29) underscores the previous point that the alleged fraud is not pled with particularity—the Complaint fails to support an inference that either of these two individuals, or any of the other defendants, "obtain[ed]" any property from Mr. Ficken as a result of their alleged misrepresentations.  18 U.S.C. §§ 1341, 1343; *accord United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) (explaining that mail and wire fraud require "a misrepresentation or non-disclosure that is intended or is contemplated to deprive the person to whom the duty is owed of some legally significant benefit") (quoting *United States v. Lemire*, 720 F.2d 1327 (D.C. Cir. 1983)).  Mr. Ficken alleges that, in 2004, American Airlines and its employees refused to honor a *previously made* commitment made to convert his TWA frequent flier miles into American Airlines frequent flier miles.  (*See* Compl. ¶ 27.)  Even if American Airlines or its employees had falsely told Mr. Ficken they could not recover his TWA frequent flier miles when in fact they simply did not want to, nothing in Mr. Ficken's Complaint supports an inference that this alleged misrepresentation caused any sort of property deprivation.  Based on the attachment to his Complaint, Mr. Ficken does not appear to have believed, much less relied upon, American Airline's stated inability to convert his TWA frequent flier miles to American Airlines frequent

flier miles in 2004.  Accordingly, not only does Mr. Ficken's Complaint fail to allege mail or wire fraud with particularity, it fails to allege mail or wire fraud at all.

        **b.**      **Pattern**

Even if Mr. Ficken's Complaint were to allege any predicate act of racketeering activity, it would still fail to allege any violation of RICO under § 1962(c), which requires a "*pattern* of racketeering activity."  18 U.S.C. § 1962(c) (emphasis added).  Such a pattern requires the commission of at least two predicate acts over a ten year period, *see* 18 U.S.C. § 1961(5), and "the Supreme Court has interpreted the pattern requirement to include two additional elements: relatedness and continuity."  *Western Assocs. Ltd.,* 235 F.3d at 633 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

The Complaint fails to allege that any one defendant committed—or conspired to commit—two or more predicate acts.  Mr. Ficken simply alleges that he received *one* email communication from Barry Robertson, and another from Lisa Norris "several weeks" later. (Compl. ¶ 26.)  Even if the sending of these emails somehow constituted a RICO predicate act, neither individual could have committed "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Nor does Mr. Ficken allege *any* possible predicate act on the part of Kurt Stache, whether in the form of a communication or otherwise; as noted earlier, Mr. Ficken does not even allege that Kurt Stache was affiliated with the Aadvantage Marketing Program when the events described in the Complaint allegedly occurred.  As for the corporate RICO defendants, AMR Corporation and American Airlines, Mr. Ficken does not allege that either of them committed more than a single predicate act—nowhere does he suggest that he was robbed or defrauded of his TWA frequent flier miles more than once.

Moreover, Mr. Ficken does not allege a sufficient "pattern of racketeering activity" under the Supreme Court's decision in *H.J.*, which in addition to requiring two predicate acts further

requires that those acts be characterized by "relatedness and continuity."  492 U.S. at 239.

Nothing in the Complaint suggests that Mr. Robertson's or Ms. Norris's communications

"involve[d] a distinct threat of long-term racketeering activity, either implicit or explicit . . . [or]

are part of an ongoing entity's regular way of doing business."  *Id.* at 242.  To the contrary, any

alleged misdeed involving Mr. Ficken's or anyone else's TWA frequent flier miles can only

occur once: TWA is no longer in business.

Accordingly, Mr. Ficken's Complaint fails to allege a pattern of racketeering activity,

either quantitatively under the "two or more" requirement of § 1961(1) or qualitatively under the

"relatedness and continuity" requirement of *H.J.*

**B.     D.C.-Law Claims**

Mr. Ficken's D.C.-law claims fare no better than his RICO claims.  In Counts II–VIII of

his Complaint, Mr. Ficken brings various D.C.-law claims against all defendants on the basis of

conversion (Counts II and III[4]), intentional and negligent infliction of emotional distress (Counts

IV–VII), and breach of contract (Count VIII).

These claims must be dismissed.  All of Mr. Ficken's claims are time-barred under D.C.

law.  Additionally, Mr. Ficken's claims for conversion, emotional distress, and breach of contract

are simply unsupported by the allegations in his Complaint.

**1.     Statute of limitations**

Each of Mr. Ficken's three claims on his own behalf—for conversion, emotional distress,

and breach of contract—is time-barred under the applicable D.C. statute of limitations.  Section

---

4  Count III does not actually state a specific claim at all, but expressly repeats the substance of
Count II (conversion) and demands the same relief: return of the property he alleges was
wrongfully taken from him.  (*See* Compl. ¶ 46.)

12-301 of the D.C. Code establishes a three-year limitation for any right of action based on deprivation of or damage to personal property, *see* D.C. Code § 12-301(2), (3), breach of contract, *see id.* § 12-301(7), or where not otherwise provided for by law, *see id.* § 12-301(8). The D.C. Court of Appeals has specifically held that this general three-year statute of limitations governs emotional distress claims, *see Saunders v. Nemati*, 580 A.2d 660, 665 (D.C. 1990), and in any event the only rights of action with a limitation period greater than three years involve rights of action that are plainly inapplicable to this case. *See* D.C. Code § 12-301(1), (10) (real property); *id.* § 12-301(6) (suits by the D.C. government); *id.* § 12-301 (administrator's bonds and sealed instruments); *Hull v. Eaton Corp.*, 825 F.2d 448, 456 (D.C. Cir. 1987) (sales under the Uniform Commercial Code). Thus all of Mr. Ficken's claims are subject to a three-year statute of limitations under D.C. law.

Although the defense that a claim is barred by the statute of limitations is typically raised in a motion for summary judgment, it "is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Trudeau*, 456 F.3d at 193 (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000)); *accord Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach*, 495 F.3d 695, 712 n.20 (D.C. Cir. 2007) (also quoting *Sparrow*). Thus a plaintiff can plead himself out of court when the allegations in his complaint actually establish that a claim is barred by the statute of limitations. *See Bradley v. NASD Dispute Resolution*, 433 F.3d 846, 849 (D.C. Cir. 2005) (dismissing a claim as time-barred under D.C. law where "[t]he face of the complaint ma[de] clear that each of the alleged injuries" occurred too far early in time).

In his Complaint, Mr. Ficken alleges that he learned of American Airlines' refusal to convert his TWA frequent flier miles to American Airlines frequent flier miles from email

13

communications sent by Barry Robertson and Lisa Norris (*see* Compl. ¶ 26).  The Complaint also states that after "Barry Robertson and Lisa Norris' refusal to transfer Plaintiffs' TWA mileage into a new or existing AA AAdvantage account, *on or shortly before* Nov. 1, 2004, Plaintiffs set up a new AA AAdvantage account for C. Invanof and I. Ivanof."  (Compl. ¶ 66) (emphasis added).  The face of the Complaint thereby establishes that Mr. Ficken received both of the communications at issue prior to November 1, 2004.

Accordingly, even under the operation of the discovery rule, the latest possible date that Mr. Ficken's D.C.-law causes of action could have accrued, based on the facts alleged, was November 1, 2004.  Mr. Ficken filed his Complaint on November 30, 2007,[5] more than three years later; all of his D.C.-law claims are therefore time-barred.

**2.      Legal insufficiency**

Even accepting all of Mr. Ficken's allegations as true, and granting him every reasonable inference therefrom, Mr. Ficken's Complaint fails to support his D.C.-law claims for conversion, intentional or negligent infliction of emotional distress, or breach of contract (including any implicit claim for promissory estoppel).  Accordingly, all of these D.C.-law claims must be dismissed.

---

[5]  The Moving Defendants are aware that, in an attachment to the Complaint entitled "Plaintiffs' Motion Requesting That the Court Set the Filing Date for this Complaint to January 19, 2006 when this Complaint Was Actually Filed with the Court" (capitalization modified), Mr. Ficken argues that the Court should consider his Complaint to have been filed on that earlier date.  (*See* Document following Compl. Attach. at 28.)  The Moving Defendants have no knowledge of whether this purported prior complaint was ever filed, and do not believe that they were served with it even if it was.  Moreover, the Moving Defendants are unaware of any provision in the Federal Rules of Civil Procedure or Local Rules for the District of the District of Columbia allowing for such a motion by Mr. Ficken or for the relief requested.

### a.     Conversion

Mr. Ficken's claim for conversion of his TWA frequent flier miles (Counts II, III),[6] as well as the claims purportedly brought on behalf of Ciprian and Isaia Ivanof, are legally insufficient: conversion does not extend to contractual expectancies or intangible property, and, even if it did, the Complaint makes it clear that none of Plaintiffs' allegedly converted frequent flier miles were ever within the control of any Defendants.  As a result, Counts II and III must be dismissed.

Under D.C. law, conversion "has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto."  *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989); *accord O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990) (quoting *Duggan*).  Even if the frequent flier miles could be considered property, Mr. Ficken admits that would be intangible. (*See* Compl. ¶ 10 at 4) (referring to "airline miles" as "an intangible form of property").  The general rule is that "personal property" element of conversion does not extend to intangible property.  *See Equity Group v. Painewebber Inc.*, 839 F. Supp. 930, 933 (D.D.C. 1993) (noting that the earlier trend towards expansion of intangible property rights subject to conversion "has stopped with the kind of intangible rights which are customarily merged in, or identified with some document," citing various types of "intangible interest[s] in [ ] business relationship[s]"), *aff'd on other grounds*, Nos. 94-7078, 94-7151, 1995 U.S. App. LEXIS 5199 (D.C. Cir. Mar. 13,

---

[6] Count II of the Complaint also lists Trover, Detinue, and Replevin as "common law doctrine[s]" under which Mr. Ficken seeks relief.  (Compl. ¶ 37) (capitalization omitted).  As noted in the Complaint, Trover, Detinue, and Replevin are simply remedies for the wrongful conversion of personal property (*see* Compl. ¶¶ 40–44), and are therefore irrelevant in light of the fact that Mr. Ficken has not sufficiently pled the underlying conversion claim.

1995) (unpublished).  Application of this tangible-property requirement clearly defeats all claims for conversion contained in the Complaint: even assuming that they are property, frequent flier miles are clearly intangible and therefore not subject to conversion under D.C. law.

Additionally, even if TWA frequent flier miles *were* "personal property" subject to conversion, the Complaint fails to state a claim for conversion because it does not allege that any Defendant ever took any frequent flier miles away from anyone.  *See Primedical, Inc. v. Allied Inv. Corp.*, 48 F.3d 1285, 1286 (D.C. Cir. 1995) ("[E]ven if any of the intangibles involved here could be converted, Equity's valid consent to the transfer means there was no conversion.").  The Complaint simply alleges that American Airlines failed to "*transfer* Plaintiffs' TWA mileage to an AA mileage account."  (Compl. ¶ 27 at 24) (emphasis added).  Nowhere does the Complaint allege that American Airlines somehow took possession of the TWA frequent flier miles as part of its acquisition of the majority of TWA's assets.  (*Cf.* Complaint ¶ 65 at 54) (accusing American Airlines of failing to "transfer[ ]" Plaintiffs' TWA miles).  In fact, the centerpiece of the Complaint is that American Airlines *never did* transfer Plaintiffs' TWA frequent flier miles to American Airlines accounts.  Using Mr. Ficken's analogy between frequent flier miles and "cash deposited in a bank" (Compl. ¶ 10 at 4), Mr. Ficken is essentially alleging that (1) he had an account in Bank A, (2) Bank B refused to accept the transfer of that account, and (3) Bank B went out of business.  These allegations would not allow recovery against Bank B in a suit for conversion.  Similarly, the facts alleged in the Complaint prevent any inference that American Airlines or any other defendant ever "exercise[d] [ ] ownership, dominion or control" over any of the *TWA* frequent flier miles allegedly belonging to the Plaintiffs.  *Duggan*, 554 A.2d at 1137.  If, as Mr. Ficken alleges, American Airlines *never transferred* the TWA frequent flier miles, then American Airlines cannot be liable for their conversion.

16

Finally, the foregoing arguments also require dismissal of Count III, which simply restates Count II with reference to an unspecified statutory equivalent of conversion and its remedies.  The Moving Defendants are unaware of any D.C. statute that creates a private civil right of action analogous to conversion, and in any event the Complaint would fail to state a claim under any such analogous statutory right of action for the same reasons that it fails to state a claim under conversion.

### b.    Intentional and negligent infliction of emotional distress

Mr. Ficken also brings claims for intentional and negligent infliction of emotional distress, on behalf of himself and his son, Ciprian Ivanof (Counts IV–VII).  These claims are unsupported by the allegations in the Complaint and must be dismissed.

To begin with, the negligent infliction of emotional distress claims are clearly inapplicable to the facts alleged.  Under D.C. law, negligent infliction of emotional distress requires that some form of *physical danger* originally caused the distress.  *See Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 759 n.9 (D.C. 2001) (rejecting a claim of negligent infliction of emotional distress based on improper sexual touching because "[n]o claim was made below that [the plaintiff] ever feared for her physical safety").  Nowhere does the Complaint suggest that any of Defendants put anyone in physical danger, and so these claims must be dismissed.

With respect to the claims for intentional infliction of emotional distress, D.C. follows the general rule that, "a defendant will be liable only if he or she engages in (1) 'extreme or outrageous conduct' which (2) 'intentionally or recklessly' causes (3) 'severe emotional distress to another.'"  *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).  The bar is set extremely high: "the plaintiff must allege conduct so outrageous in character, and so extreme in degree, as to go

17

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kerrigan*, 705 A.2d at 628 (internal quotation marks omitted) (also noting that D.C. courts "traditionally have been demanding in the proof required to support an intentional infliction of emotional distress claim"). By way of example, this "outrageousness" requirement often defeats claims for intentional infliction of emotional distress in employment settings—where, despite the extraordinarily high personal and financial stakes, ill-treatment and discharge are routinely held to be not "outrageous" as a matter of law. *See, e.g.*, *Crowley v. North Am. Telcoms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997) ("Essentially, Crowley alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory."); *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-212 (D.C. 1997) (noting that D.C. "cases show that, generally, employer-employee conflicts do not rise to the level of outrageous conduct," and offering "an alleged assault of employee and subsequent termination" and the "cursing of pregnant employee" as examples of conduct held not outrageous as a matter of law).

Here, in contrast to the employment examples listed above, all dealings between Mr. Ficken and Defendants were at arm's length: they took place over the telephone or via email with individuals not personally known to Mr. Ficken (*see* Compl. ¶¶ 27–29), and certainly not in any personal, fiduciary, or other relationship of trust or confidence with him. Moreover, the face of the Complaint itself makes it clear that Defendants' conduct was *not* outrageous: Mr. Ficken quotes an extremely polite email response from Barry Robertson in which Mr. Robertson acknowledged that American Airlines "must earn the respect and loyalty of [its] customers by

providing them with outstanding service," and expressed the hope that American Airlines could do so for Mr. Ficken in the future. (Compl. ¶ 52 at 39.)

The D.C. courts have repeatedly refused to allow claims for intentional infliction of emotional distress even for shocking, rude, and economically ruinous conduct—to do so would turn garden-variety disputes over workplace termination into actionable torts. By the same token, allowing a garden-variety business dispute—especially one without *any* allegation of rude or impolite conduct on the part of a single defendant—to morph into a claim for intentional infliction of emotional distress would turn that narrow and restricted tort on its head. For these reasons, Mr. Ficken's claims for intentional and negligent infliction of emotional distress (Count VI, VII)—as well as Ciprian Ivanof's purported claims for the same (Count IV, V)—must be dismissed.

### c.    Breach of contract / promissory estoppel

Finally, in Count VIII of the Complaint, Mr. Ficken brings a claim for breach of contract on behalf of himself, Ciprian Ivanof, and Isaia Ivanof. It is unclear against whom he brings this claim, but only AMR Corporation and American Airlines are expressly alleged to have some sort of contractual obligation towards him and the other Plaintiffs. (*See* Compl. ¶ 65 at 53.) Regardless of which Defendants (or Plaintiffs) are involved in this claim for breach of contract, it fails for lack of consideration. Nowhere does Mr. Ficken allege that he promised or gave up anything of value in order to obtain the American Airlines miles to which he claims to be entitled, or that he was the intended beneficiary of any third-party agreement. Nor could Mr. Ficken simply amend his complaint to state a promissory estoppel claim based on the same allegations; even if he sufficiently plead all other elements, any promissory estoppel claim would fail for lack of any injury to a reliance interest. As a result, Count VIII must be dismissed.

i.    **Breach of contract**

First, the breach of contract claim against AMR Corporation and American Airlines fails because Mr. Ficken has not alleged the existence of any agreement between himself and a Defendant that was supported by bargained-for consideration.  *See Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 56 (D.C. 1997) ("Generally, consideration is necessary to make a promise enforceable."); *see also Vaccaro v. Andresen*, 201 A.2d 26, 28 (D.C. 1964) ("An enforceable contract of guaranty or suretyship requires, as do all contracts, a valid consideration."); Restatement (Second) of Contracts § 71 (1981) (defining consideration as "a promise," "an act other than a promise," "a forbearance," or "the creation, modification, or destruction of a legal relation," and requiring that it be "bargained for").

Mr. Ficken alleges that he (and the other Plaintiffs) had a "contractual arrangement" *with TWA* by virtue of regularly flying on TWA flights in exchange for TWA frequent flier miles. (Compl. ¶ 64 at 53.)  The only alleged agreements with AMR Corporation and American Airlines involved (1) separate frequent flier mile accounts created in 2004 (*see* Compl. ¶ 66 at 54–55) and (2) an alleged "contractual agreement to transfer Plaintiffs' TWA mileage" (Compl. ¶ 65 at 54).  The first agreement is irrelevant, since Mr. Ficken does not allege that any Defendants ever failed to honor any frequent flier miles created under the accounts established in 2004.  The second is an unsupported legal conclusion: Mr. Ficken does not allege any facts from which one could infer that any promise by American Airlines to convert Plaintiffs' TWA frequent flier miles was obtained in exchange for "bargained[-]for" consideration.  Restatement (Second) of Contracts § 71(1).

Nor does the Complaint allege that TWA ever delegated—or that AMR Corporation and American Airlines ever assumed—any obligation under any contractual relationship that might have existed between Plaintiffs and TWA.  Such an assumption would require a separate

contractual agreement between TWA and American Airlines or AMR Corporation naming a Plaintiff as an intended beneficiary. *See Hopkins v. Akins*, 637 A.2d 424, 428-429 (D.C. 1993) (restating the general rule that third parties have no rights under a contract unless they "were the direct and intended beneficiaries" of the contract). No such agreement is alleged. The nearest mention in the Complaint is the averment that, upon "buying out the assets of TWA, which was in bankruptcy proceedings, Defendants agreed to follow the previous practice of the airline industry in assuming the frequent flyer mileage deposited in TWA's airline mileage program." (Compl. ¶ 65 at 53.) But the next sentence, again discussing Mr. Ficken's telephone conversations with Barry Robertson and Lisa Norris, makes it clear that American Airlines' alleged commitment to "assume[ ]" TWA's frequent flier miles was made *to the Plaintiffs* rather than to TWA—and therefore lacked consideration. Furthermore, as Mr. Ficken correctly alleges, AMR's acquisition of TWA was an acquisition "of the assets of TWA" (*see id.*), which does not give rise to successor liability except under specific exceptional circumstances not alleged in the Complaint. *See Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 90 (D.C. 1994) ("Ordinarily, a business entity which acquires the assets of another business is not liable for its predecessor's liabilities and debts."). Accordingly, the allegations in the Complaint fail to support Plaintiffs' claim for breach of contract.

### ii.    Promissory estoppel

The legal insufficiency of Mr. Ficken's breach of contract claim is not something that he can rectify by simply amending his Complaint to plead promissory estoppel. While the breach of contract claim fails for lack of consideration, any promissory estoppel claim would fail for lack of damage to a reliance interest.

To begin with, the only alleged statements that could colorably support a promissory estoppel claim would be those allegedly made to Mr. Ficken by the unnamed American Airlines

21

customer service representative in August of 2001 (*see* Compl. ¶ 27 at 21–22). Specifically, Mr. Ficken alleges that this unnamed customer service representative promised that Plaintiff's TWA airline frequent flier miles would "automatically convert" into American Airlines frequent flier miles on November 1, 2001, after which they would remain valid for three years, until November 1, 2004. (Compl. ¶ 27 at 23–24.) All other promises that might somehow affect the Plaintiffs' rights—such as the agreement between TWA and the Plaintiffs' creating the TWA frequent flier miles at issue and the agreement between AMR Corporation and TWA effecting a sale of the latter's assets—are part of distinct contracts, and therefore not subject to promissory estoppel. *See Moss v. Stockard*, 580 A.2d 1011, 1035 (D.C. 1990) (noting that promissory estoppel is a doctrine "which allows the court to enforce a promise absent a binding contract"); *see also Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 71 (D.D.C. 2005) ("District of Columbia law presupposes that an express, enforceable contract is absent when the doctrine of promissory estoppel is applied.") (internal quotations omitted).

A claim under promissory estoppel requires "(1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to her detriment." *Id.* (citing *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994)). At the very least, the Complaint fails to allege the third element: detrimental reliance. Mr. Ficken does allege *expectation* damages—namely, the loss of the TWA frequent flier miles that allegedly *would have been* converted into American Airlines frequent flier miles. (*See* Compl. ¶ 65 at 53–54.) But the face of his Complaint makes it clear that neither Mr. Ficken nor any other Plaintiff suffered any detrimental reliance. Injury to a plaintiff's reliance interest is defined by comparing the plaintiff's actual situation not to what he could have expected had the promise been performed, but rather to his situation *had the promise never been made in the first place*.

*See Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 245–46 (D.C. Cir. 1995) (defining "reliance damages" as those necessary to place the plaintiff "in as good a position as he was in before the promise was made"); *see also Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 703 (7th Cir. 2004) (noting that "usual measure of damages under a theory of promissory estoppel is the loss incurred by the promisee in reasonable reliance on the promise") (citation omitted); Restatement (Second) of Contracts § 344(b).

If American Airlines had never promised to convert Plaintiffs' TWA frequent flier miles to American Airlines frequent flier miles, Plaintiffs' TWA frequent flier miles *would have been lost anyway*. The Complaint correctly alleges that TWA went bankrupt and then went out of business in 2001. (Compl. ¶ 27 at 21–22, ¶ 65 at 53.) Nowhere does Mr. Ficken allege that he or any of the other Plaintiffs gave up anything by trying to transfer their soon-to-be-defunct TWA frequent flier miles: for example, he does not allege that Plaintiffs planned to use the miles during 2001 or sell them to some third party (even if the latter were possible). By relying on American Airlines' alleged promise to convert their TWA frequent flier miles, Plaintiffs are no worse off than if American Airlines had never allowed conversion of those miles in the first place. The Complaint therefore fails to allege detrimental reliance, preventing any potential promissory estoppel claim from succeeding where Plaintiffs' breach of contract claim failed.

## IV.    Conclusion

Plaintiffs' Complaint fails on multiple grounds. It attempts to bring claims on behalf of two Plaintiffs who are not proper parties; it brings claims against one Defendant without alleging that the Defendant committed any act or omission; and its D.C.-law claims on behalf of Mr. Ficken are time-barred. More fundamentally, however, the allegations in the Complaint simply fail to support the claims. The Complaint brings claims under RICO, but fails to allege the existence of any distinct enterprise, operation or management of that enterprise by the

Defendants, or a predicate act or pattern of racketeering activity.  The Complaint brings D.C.-law claims for conversion, infliction of emotional distress, and breach of contract, but fails to allege their respective necessary elements: interference with property, outrageous conduct, and consideration.  For all of these reasons, the Complaint fails to state any claim by any Plaintiff upon which relief can be granted.  Accordingly, the Complaint must be dismissed in its entirety.


Dated: January 18, 2008                    Respectfully submitted,


                                          /s/ Wayne A. Schrader
                                          Wayne A. Schrader (D.C. Bar No. 361111)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, D.C. 20036
                                          Telephone: (202) 955-8556
                                          Facsimile: (202) 530-9592

                                          *Counsel for Defendants*
                                          AMR CORPORATION,
                                          AMERICAN AIRLINES, INC.,
                                          AMR EAGLE HOLDING CORPORATION, and
                                          KURT STACHE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IVAN FICKEN, CIPRIAN IVANOF, and ISAIA IVANOF,<br><br>*Plaintiffs*,<br><br>v.<br><br>AMR CORPORATION, AMERICAN AIRLINES, INC., AMR EAGLE HOLDING CORPORATION, and KURT STACHE, each of whom has the address of 4333 Amon Carter Blvd., Fort Worth, Texas 76155, and BARRY ROBERTSON and LISA NORRIS,<br><br>*Defendants*. | No. 1:07cv02166 (RMU)<br><br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) |

**[PROPOSED] ORDER**

The Court hereby GRANTS Defendants' Motion to Dismiss Plaintiffs' Complaint

pursuant to Fed. R. Civ. P. 12(b)(6).


IT IS SO ORDERED on this _____ day of _____, 2008.


_____
RICARDO M. URBINA
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused copies of Defendants' Motion to Dismiss under Rule 12(b)(6), Supporting Memorandum of Points and Authorities, and Proposed Order, submitted by Defendants AMR Corporation, American Airlines, Inc., AMR Eagle Holding Corporation, and Kurt Stache, to be transmitted on January 18, 2008 via certified mail and electronic mail to the *pro se* Plaintiffs at the following addresses:

      2020-1/2 Second Street
      Eau Claire, WI 54703

      altruistic10@yahoo.com

Dated: January 18, 2008          Respectfully submitted,


           /s/ Wayne A. Schrader
          Wayne A. Schrader (D.C. Bar No. 361111)
          GIBSON, DUNN & CRUTCHER LLP
          1050 Connecticut Avenue, N.W.
          Washington, D.C. 20036
          Telephone: (202) 955-8556
          Facsimile: (202) 530-9592

          *Counsel for Defendants*
          AMR CORPORATION,
          AMERICAN AIRLINES, INC.,
          AMR EAGLE HOLDING CORPORATION, and
          KURT STACHE