**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IVAN FICKEN, CIPRIAN IVANOF, and ISAIA IVANOF, | |
| *Plaintiffs*, | |
| v. | No. 1:07cv02166 (RMU) |
| AMR CORPORATION, AMERICAN AIRLINES, INC., AMR EAGLE HOLDING CORPORATION, and KURT STACHE, each of whom has the address of 4333 Amon Carter Blvd., Fort Worth, Texas 76155, and BARRY ROBERTSON and LISA NORRIS, | REPLY MEMORANDUM |
| *Defendants*. | |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

# I.    Introduction

On January 18, 2008, Defendants AMR Corporation, American Airlines, Inc., AMR Eagle Holding Corporation, and Kurt Stache moved to dismiss all claims in this suit under Rule 12(b)(6) and attached a Memorandum of Points and Authorities in support of that motion. According to Mr. Ficken, the Court received his Memorandum in Opposition to Defendants' motion on February 20, 2008.  On March 3, 2008, the Court denied Mr. Ficken leave to file because his Memorandum in Opposition lacked proof of service.  On March 11, 2008, Mr. Ficken served Defendants with a copy of his rejected Memorandum in Opposition (including attachments).

In the event that Mr. Ficken's Memorandum in Opposition is later accepted for filing, Defendants submit this Reply Memorandum to address some of the issues raised in that document.  Previously, in their Memorandum of Points and Authorities, Defendants addressed the legal insufficiency of each of Plaintiffs' claim in detail—and believe that those arguments remain valid.  In the following few pages, Defendants will non-exhaustively canvass parts of their original argument and attempt to respond to any substantive counter-arguments contained in Mr. Ficken's Memorandum in Opposition.[1]

---

[1] Defendants recognize that—in order to adequately respond to each of Mr. Ficken's claims— they were forced to cite a large number of legal authorities in their Memorandum of Points and Authorities, and they appreciate the burden that this might place on a *pro se* litigant.  (*Cf.* Pls.' Memo. in Opp. 36 n.9.)  This Reply Memorandum therefore builds on the legal analysis already contained in Defendants' Memorandum of Points and Authorities, citing additional legal authority only when necessary.

## II.     Parties Properly Before the Court

### A. Plaintiffs

Aside from offering to refile his Complaint as a class action or become an active member of the Nebraska bar (*see* Pls.' Mem. in Opp. 8–9), Mr. Ficken does little to address a central defect in Plaintiffs' Complaint: that it is really *Plaintiff's* Complaint, since Mr. Ficken is the only one who signed it.  Mr. Ficken offers no reason why Isaia Ivanof is legally incompetent other than the fact that Mr. Ivanof lives in a village in Romania and is "not fluent in English."  (*Id.* at 8.)  Nor does Mr. Ficken offer any legally valid basis on which he can represent his adult son: even if the Court were able to accept the purported "Limited Power of Attorney" form (Pls.' Mem. in Opp. Attach. 2) as having retroactive effect, the form itself is facially invalid, lacking not only the seal of a notary public, *see* D.C. Code Ann. § 21-2101 (2008), but also a date. Nonetheless, if the Court should hold that either Ciprian or Isaia Ivanof's claims are property before it, all of the arguments advanced in Defendants' Memorandum of Points and Authorities and in the following sections of this document—with the exception of the statute of limitations argument in the case of Ciprian Ivanof—apply to the two Ivanofs' claims to the same extent as they do to Mr. Ficken's.

### B. Defendants

As noted in Defendants' Motion to Dismiss, counsel for the Moving Defendants also represents Barry Robertson and Lisa Norris in this matter.  But these two named Defendants have yet to receive service of Plaintiffs' Summons and Complaint, and Mr. Ficken offers no argument that service was otherwise properly made under Federal Rule of Civil Procedure 4(e) or Texas Rule of Civil Procedure 106.  Nevertheless, should the Court hold that service was properly made on Mr. Robertson or Ms. Norris, Plaintiffs' claims against them fail for the same

reasons that Plaintiffs' claims against the other Defendants fail, as discussed below and in Defendants' Memorandum of Points and Authorities.

### III.    Analysis of Claims

In their Memorandum of Points and Authorities, Defendants recited the familiar rule that, in the context of a motion to dismiss under Rule 12(b)(6), a plaintiff is entitled to have the court treat his factual allegations as true and give him the benefit of all reasonable inferences from those allegations.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006).  The other side of this rule, however, is that a plaintiff is limited to the facts he alleges—those facts, along with any reasonable inferences therefrom, must support the plaintiff's claims.  Notwithstanding his protestations to the contrary, Mr. Ficken's allegations do not support his legal claims.

### A. RICO Claims

Although apparently enticed by its treble-damage provisions (*see* Compl. Attach. 1 at 25), Mr. Ficken appears to misunderstand RICO law.  It does not merely require that a Defendant "developed or participated in a conspiracy to financially injure the victim."  (*Id.*)  Instead, 18 U.S.C. § 1962(c)—the provision under which Mr. Ficken brings his RICO claims—requires that the defendants act *through a separate enterprise*.  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001).  Mr. Ficken does not allege—and even in his Memorandum in Opposition does not identify (Pls.' Mem. in Opp. 11–12)—any enterprise through which Defendants acted other than American Airlines itself.  Because American Airlines is also a Defendant in this case, Mr. Ficken has failed to allege the "enterprise" element of his RICO claim.

Mr. Ficken's RICO claim also fails because he does not allege any RICO predicate acts. Simply using the words "robbery" and "fraud" in a complaint is insufficient—a court is not

required to accept a complaint's legal assertions. *See Western Assocs. Ltd. v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). Mr. Ficken does not even attempt to argue that he was violently "robbed" of any frequent flier miles (*see* Pls.' Mem. in Opp. 17), nor does his Complaint support a fraud allegation.

With respect to his allegations of mail and wire fraud, Mr. Ficken does not claim that any Defendant *obtained* anything of value from him—to the contrary, he appears to admit that no Defendant received any benefit from taking the frequent flier miles that were allegedly his (*see id.* at 18–19). This concession would doom his RICO-predicate fraud allegation under the plain meaning of the mail and wire fraud statutes *even if* his alleged frequent flier miles constituted property,[2] which they do not.[3]

Even if a literal transfer of property were not an element of mail and wire fraud—that is, if it were enough to simply deprive the alleged victim of some property without taking that property for oneself—the Complaint would still not support a fraud allegation against any named Defendant. Mr. Ficken alleges that he was deprived of TWA frequent flier miles when TWA went out of business, not that American Airlines somehow took those miles out of TWA's

---

[2] *See* 18 U.S.C. §§ 1341, 1343 (requiring that the fraudulent scheme involve "*obtaining* money or property") (emphasis added); *see also United States v. Walters*, 997 F.2d 1219, 1227 (7th Cir. 1993) ("Both the 'scheme or artifice to defraud' clause and the 'obtaining money or property' clause of § 1343 contemplate a transfer of some kind."); *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Employees and Rest. Employees and Rest. Employees Union*, 215 F.3d 923, 926–27 (9th Cir. 2000) ("The purpose of the mail and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."); *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (holding that the § 1341 "was intended by the Congress only to reach schemes 'that have as their goal the transfer of something of economic value to the defendant'").

[3] *See Cleveland v. United States*, 531 U.S. 12, 23 (2000) (requiring that property under § 1341 "compos[e] an interest that has long been recognized as property") (internal quotation marks omitted).

computer system and destroyed them.[4]

Furthermore, notwithstanding Mr. Ficken's assertions to the contrary, the Complaint does not plead mail or wire fraud with particularity. *See* Fed. R. Civ. P. 9(b). Nowhere in his Complaint does he precisely describe any *intentionally* deceptive statement made to him that caused him to give up property. Even in his Memorandum in Opposition, Mr. Ficken is unable to identify anyone—Barry Robertson, Lisa Norris, the unnamed American Airlines employee with whom he allegedly spoke in August 2001, or anyone else—who made a false statement to him while knowing that statement to be untrue, much less identify the particular circumstances surrounding what such a person actually did know to be true.

**B. D.C.-Law Claims**

**1. Statute of Limitations**

Mr. Ficken argues that his D.C.-law claims are not barred by D.C.'s three-year statute of limitations because he attempted to file an otherwise identical cause of action on January 19, 2006, within the statute's time limitation by approximately nine months—it appears that this suit was never filed because Mr. Ficken did not pay the filing fee (*see* Pls.' Mem. in Opp. 20). Mr. Ficken has identified no authority to support his request that the Court "back date[e]" (*id.* at 22) this Complaint to make it timely, and Defendants—as well as their counsel (*cf. id.* at 22)—are unaware of any statute or rule that would allow this.[5] Mr. Ficken's "personal precedent for

---

[4] Mr. Ficken's conversion claim fails for the same reason, as discussed below.

[5] The most analogous authority Defendants are aware of points the other way: the D.C. Circuit, applying D.C. law, has held that a statute of limitations is not tolled during the pendency of an action that was voluntarily or involuntarily dismissed. *See Carter v. Washington Metropolitan Area Transit Authority*, 764 F.2d 854, 856 (D.C. Cir. 1985) (citing *Dupree v.*

[Footnote continued on next page]

allowing such back dating" (Pls.' Mem. in Opp. 22) is neither precedential nor relevant. According to Mr. Ficken's description, in his prior case his Complaint *was* accepted for *in forma pauperis* filing, meaning that it never required a filing fee in the first place—thus Mr. Ficken had, in fact, properly filed his suit when he first submitted it to the court.

### 2. Conversion

As noted above, Mr. Ficken's conversion claim shares a fundamental flaw with his mail and wire fraud allegations: the Complaint fails to allege that any Defendant *took* property from him, since his TWA frequent flier miles were never transferred to American Airlines in the first place.  Mr. Ficken boldly proclaims his outrage at this observation (*id.* at 24), but the only discernable legal argument he offers to the contrary is that American Airlines exercised dominion and control over his TWA frequent flier miles when it allegedly *offered* to transfer those miles in August 2001 (*id.* at 23).

Under this argument, however, even if American Airlines could have *saved* Mr. Ficken's TWA frequent flier miles from vanishing when TWA dissolved, American Airlines could not have *taken* his TWA miles.  (*Id.*)  Mr. Ficken does not suggest that he was actually deprived of his TWA miles at the moment he declined American Airlines' offer to transfer them in August 2001.  The miles did not vanish; presumably, he could have called back and had the miles transferred a few minutes later, or booked a flight during the remaining few months that TWA was in business.  No action by American Airlines made the TWA miles disappear; based on the allegations in the Complaint, Mr. Ficken lost his TWA frequent flier miles *when TWA ceased to*

---

[Footnote continued from previous page]
*Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981)).  If a dismissed action cannot toll the D.C. statute of limitations, it is hard to see how a non-existent one could—particularly when the Defendants never received service.

*exist.* What Mr. Ficken is effectively arguing is that American Airlines had a duty to ensure that he *avoided this loss* by transferring his TWA miles to an American Airlines account—which, even if true, places his claim solely within the domain of contract law.

Admittedly, the intangible nature of frequent flier miles somewhat obscures the distinction between a present deprivation of property and the loss of a future expectancy; but it also underscores the other basic flaw in Mr. Ficken's conversion claim, which is that intangible property is not subject to conversion in the first place.

### 3. Intentional and Negligent Infliction of Emotional Distress

In his Memorandum in Opposition, Mr. Ficken appears to implicitly drop his negligent infliction of emotional distress claim: he does not argue that his or son's alleged emotional distress was caused by any exposure to physical danger. With respect to his intentional infliction of emotion distress claim, Mr. Ficken's primary argument appears to be a cursory assertion that Defendants' conduct was "outrageous" as a matter of law, followed by a discussion of experimental psychology and Adolf Eichmann. (*Id.* at 25.)

At one point in this discussion, however, Mr. Ficken makes a significant legal point: in tort law, although damages are measured subjectively, whether a tort has been committed is evaluated objectively. (*Id.* at 27–28.) Thus Mr. Ficken's further discussion of his emotional "*osteogenesis imperfecta*" (*id.* at 28), as tragic as it may be, is beside the point: whether conduct qualifies as "outrageous" is evaluated under an ordinary-person standard. In light of the extremely high bar for outrageousness, *see Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997), as well as D.C. precedent regarding various appalling acts that haven fallen short of that standard as a matter of law (*see* Defs.' Mem. of P. & A. 17–18), Mr. Ficken's

allegations are plainly insufficient to support a claim for intentional infliction of emotional distress.

### 4. Breach of Contract and Promissory Estoppel

As noted above, and in Defendants' Memorandum of Points and Authorities, this entire dispute is fundamentally one under contract law. Ultimately, the allegations in his Complaint do not support a claim for breach of contract or promissory estoppel—and in any event are barred by the statute of limitations[6]—but at least these contract-law claims are non-frivolous.

### a. Breach of contract

Mr. Ficken concedes that he was not the intended beneficiary of any contract between TWA and American Airlines. (Pls.' Mem. in Opp. 31.) He also correctly alleges that American Airlines purchased TWA's assets in 2001, which would not by itself give rise to successor liability. *See Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 90 (D.C. 1994). Nor does Mr. Ficken ever allege or argue that American Airlines contractually assumed TWA's liabilities under TWA's frequent flier program.[7]

---

[6] These two claims are also clearly personal to Mr. Ficken: from the Complaint it appears that Mr. Ficken was the only Plaintiff to ever deal personally with American Airlines, meaning he would be the only Plaintiff to whom American Airlines—or any other Defendant—could have made any definite or specific promise. Mr. Ficken's contract-law claims are therefore barred by D.C.'s three-year statute of limitations; he does not allege that he suffered from any incompetency that would toll the statute of limitations, and his "backdating" argument fails for the reasons described above.

[7] The nearest Mr. Ficken comes to discussing the terms of the American Airlines' agreement with TWA is the suggestion that he needs "discovery access to the Bankruptcy Court documents and internal AA memoranda concerning this" successor liability issue. (Pls.' Mem. in Opp. 31.) Mr. Ficken already has access to this information: the text of the TWA

[Footnote continued on next page]

Thus the only question relevant to Mr. Ficken's breach-of-contract claim is whether *American Airlines* entered into an agreement with him that was supported by bargained-for consideration. The Complaint does not allow any inference that it did. American Airlines' public representations to the flying public were both expressly non-binding and too indefinite to constitute contractual agreements (*see* Pls.' Mem. in Opp. 32); the only potential consideration that could have supported an agreement between Mr. Ficken and American Airlines would have been Mr. Ficken's decision to forego transfer of his TWA frequent flier miles in August 2001 (*see* Compl. ¶ 65). Critically, however, Mr. Ficken does not allege that American Airlines "sought" this forbearance "in exchange for" its alleged promise to automatically transfer the miles in November 2001. Restatement (Second) of Contracts § 71(2) (1981). It appears from the Complaint that Mr. Ficken's decision to hold off on transferring the miles was a unilateral act, not part of a bargain he struck with American Airlines. Accordingly, Mr. Ficken's breach of contract claim fails for lack of consideration.

### b. Promissory estoppel

As noted in Defendants' Memorandum of Points and Authorities, although a breach of contract claim can be brought for harm to a future expectancy under an agreement, a promissory estoppel claim cannot. (*See* Defs.' Mem. of P. & A. 21–23.) Thus Mr. Ficken's promissory estoppel claim fails for largely the same reason as his conversion claim: the alleged loss of his TWA frequent flier miles was caused by TWA's dissolution, not some affirmative act on the part of any Defendant. The baseline against which Mr. Ficken's reliance damages must be measured

---

[Footnote continued from previous page]
asset purchase agreement is publicly available on the Securities and Exchange Commission's EDGAR website. *See* http://www.sec.gov/edgar.shtml (last visited Mar. 14, 2008).

is a world without any promise by American Airlines—that is, a world in which TWA dissolved and he lost his TWA frequent flier miles. According to the Complaint, this is exactly what happened; Mr. Ficken therefore suffered no detrimental reliance.

Mr. Ficken tries to get around this hurdle by arguing that there were two separate promises made by American Airlines: one to transfer his miles, and a second to transfer his miles automatically. He then argues that American Airlines' alleged breach of the second promise caused detrimental reliance, because otherwise he would have taken American Airlines up on its first promise to transfer the miles. (*See* Pls.' Mem. in Opp. 34.)

The premise of this argument is incorrect: the Complaint only alleges the existence of one promise that could have been breached. Even if the law of promissory estoppel allowed a promisee to base his reliance damages on what he would have done if had he accepted an alternative promise from the same breaching promisor, there is no such alternative promise here. Although the Complaint alleges that American Airlines made various public statements about a contemplate mileage transfer, it does not allege that American Airlines *personally* promised anything to Mr. Ficken before his August 2001 telephone conversation with the American Airlines customer service representative. Instead, the Complaint simply alleges that American Airlines, through this representative, told Mr. Ficken that it would transfer his miles in a particular manner and then failed to do so. Had this promise never been made, Mr. Ficken would be in exactly the same position he is in now: he would have lost his TWA frequent flier miles when TWA dissolved. Mr. Ficken therefore did not suffer detrimental reliance.

## IV.    Conclusion

In this Reply Memorandum, Defendants have endeavored to address the substantive aspects of Mr. Ficken's arguments as simply and straightforwardly as possible, though with the

caveat that Defendants were unable to reiterate all of their original arguments in support of their

Motion to Dismiss or respond to every assertion made by Mr. Ficken in his Memorandum in

Opposition.  Defendants also wish to make it clear that they offer no factual assertions regarding

what may or may not have happened in Mr. Ficken's case, notwithstanding various accusations

by Mr. Ficken that seem to assume otherwise.  (*See, e.g.*, *id.* at 35.)  It is Mr. Ficken's own

Complaint that fails to support his legal claims, and it is for this reason that the Complaint should

be dismissed.


Dated: March 24, 2008                              Respectfully submitted,

                                                    /s/ Wayne A. Schrader
                                                   Wayne A. Schrader (D.C. Bar No. 361111)
                                                   GIBSON, DUNN & CRUTCHER LLP
                                                   1050 Connecticut Avenue, N.W.
                                                   Washington, D.C. 20036
                                                   Telephone: (202) 955-8556
                                                   Facsimile: (202) 530-9592

                                                   *Counsel for Defendants*
                                                   AMR CORPORATION,
                                                   AMERICAN AIRLINES, INC.,
                                                   AMR EAGLE HOLDING CORPORATION, and
                                                   KURT STACHE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused copies of Defendants' Reply Memorandum in Support of

Defendants' Motion to Dismiss under Rule 12(b)(6) to be transmitted on March 24, 2008 via

certified mail, first class mail, and electronic mail to the *pro se* Plaintiffs at the following

addresses:

      2020-1/2 Second Street
      Eau Claire, WI 54703

      altruistic10@yahoo.com


Dated: March 24, 2008           Respectfully submitted,


                  _/s/ Wayne A. Schrader_____
                  Wayne A. Schrader (D.C. Bar No. 361111)
                  GIBSON, DUNN & CRUTCHER LLP
                  1050 Connecticut Avenue, N.W.
                  Washington, D.C. 20036
                  Telephone: (202) 955-8556
                  Facsimile: (202) 530-9592

                  *Counsel for Defendants*
                  AMR CORPORATION,
                  AMERICAN AIRLINES, INC.,
                   AMR EAGLE HOLDING CORPORATION, and
                  KURT STACHE