## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IVAN FICKEN *et al.*,                                    :
                                                        :
                    Plaintiffs,                         :
                                                        :         Civil Action No.:        07-2166 (RMU)
                    v.                                  :
                                                        :         Document Nos.:          3, 9
AMR CORPORATION *et al.*,                               :
                                                        :
                    Defendants.                         :

### MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS;
GRANTING THE PLAINTIFF'S MOTION TO TOLL THE STATUTE OF LIMITATIONS**

## I. INTRODUCTION

The *pro se* plaintiff in this action, Ivan Ficken, purports to bring suit on behalf of himself,

his adopted son, Ciprian Ivanof, and Ciprian Ivanof's biological father, Isaia Ivanof, against

AMR Corporation, three AMR employees, American Airlines, Inc. and AMR Eagle Holding

Corporation.  The complaint stems from the plaintiff's[1] loss of his Trans World Airlines

("TWA") frequent flyer miles that occurred as a result of the purchase of TWA by American

Airlines ("AA") in 2001.  The plaintiff contends that by depriving him of the frequent flyer miles

that he had earned, the defendants violated the Racketeer Influenced and Corrupt Organizations

("RICO") Act, 18 U.S.C. § 1962, and committed the torts of "trover, detinue, replevin or

conversion;" intentional and negligent infliction of emotional distress; and breach of contract.

The defendants move to dismiss, arguing that only Ficken is a proper plaintiff, that all of the

claims are barred by the statute of limitations and that the plaintiff has failed to state a claim

---

[1]     Because the court determines that Ficken is the only proper plaintiff in this case, *see infra* Part
III.B, it refers to a singular "plaintiff" throughout this Memorandum Opinion.

upon which relief can be granted.  In addition, the plaintiff has filed a motion "requesting that the court set the filing date for this complaint to January 19, 2006 when this complaint was actually filed with the court."  The court grants in part and denies in part the defendants' motion to dismiss and, construing the plaintiff's motion as a request to toll the statute of limitations, grants that request.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The court has gathered from the plaintiff's diffuse complaint the following facts, which it accepts as true for the purpose of this motion.  Beginning in the late 1980s, the plaintiff joined TWA's frequent flyer program and began accruing mileage, some of which he used in 1990 to fly to Romania to adopt Ciprian Ivanof.  Compl. ¶¶ 10-12.  The plaintiff later registered frequent flyer mileage accounts for Ciprian and his biological father, Isaia Ivanof, and over the next several years the plaintiff and Ciprian made many trips back to Romania to visit and provide aid to Isaia and others.  *Id*. ¶¶ 13-15.

In August 2001, after learning that TWA would soon be bought out by AA, the plaintiff spoke to a representative of AA's frequent flyer program, AAdvantage, to determine how his TWA frequent flyer miles could be converted to AAdvantage miles.  *Id*. ¶ 27.  The AAdvantage representative told the plaintiff that he could choose to transfer his TWA mileage to AAdvantage mileage immediately, but if he did not, the TWA mileage would automatically be converted to AAdvantage mileage on or about November 1, 2001.  *Id*.  Regardless of when his mileage was converted, the representative told the plaintiff, he would be required to log some account activity within three years of the transfer in order for the account to remain open.  *Id*.  The plaintiff

2

elected to let the mileage automatically transfer over on November 1, 2001. *Id*.

Cognizant of the requirement that he log account activity within three years of the transfer, the plaintiff contacted AAdvantage "[a] more than adequate number of months prior to Nov[ember] 1, 2004," but, to his surprise, was told that his TWA mileage was not recoverable because the deadline for converting it to AAdvantage mileage had passed more than a year earlier. *Id*. ¶ 28. After failing to recover his TWA mileage through further correspondence with AAdvantage representatives, the plaintiff brought the instant action.

## III.  ANALYSIS

### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). That said, it is possible,

however, "for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"); *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of

limitations issues often depend on contested questions of fact, however, the court should hesitate

to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.

*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Rather, the court should grant a

motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't

of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  If "no reasonable person could disagree on the

date" on which the cause of action accrued, the court may dismiss a claim on statute of

limitations grounds.  *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475

(D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11

(D.C. Cir. 1989)).

### B.  Claims on Behalf of Ciprian and Isaia Ivanof

As a preliminary matter, the court must address the fact that the complaint purports to be

brought by the plaintiff on his own behalf and on behalf of Ciprian and Isaia Ivanof.  *See* Compl.

at 1.  The defendants contend that the Ivanofs are not proper plaintiffs because they failed to sign

the complaint.  Defs.' Mot. at 2.  Further, the defendants assert that the plaintiff may not sue on

behalf of Ciprian Ivanof because, based on the plaintiff's statement that Ciprian was "little over

two years old" in "early 1990," "he must now be at least nineteen years of age."  *Id.*

Because the Ivanofs are not proper plaintiffs in their own capacity due to their failure to

sign the complaint, *see* FED. R. CIV. P. 11(a), they are parties to this matter only if the plaintiff

properly brought suit on their behalf, *see* D.C. Code § 12-302(a).  The defendants correctly assert

that the plaintiff may act as Ciprian Ivanof's representative in this suit only if Ciprian is under 18

years of age or otherwise legally disabled.  *Id.*; *see also Osuchukwu v. Gallaudet Univ.*, 296 F.

Supp. 2d 1, 1 (D.D.C. 2002) (barring a father from bringing an action on behalf of his children

who were minors when the allegedly tortious conduct occurred but older than 18 at the time of the lawsuit).  Based on the reference to Ciprian's age in the complaint, *see* Compl., Attach. at 10, Ciprian turned 18 sometime in 2006, and accordingly, the plaintiff may not sue on his behalf unless he is authorized to do so by a duly executed power of attorney.[2]  Therefore, the court grants the defendants' motion to dismiss the claims purportedly brought on behalf of Ciprian Ivanof.

As for Isaia Ivanof, the defendants point to the plaintiff's failure to assert any legal disability that would allow the plaintiff to sue on his behalf.  Defs.' Mot. at 2.  In his opposition to the defendants' motion to dismiss, the plaintiff argues that the court should consider Isaia Ivanof legally disabled because he lives in Romania, is not fluent in English and is unfamiliar with frequent flyer miles and the U.S. legal system.  Pl.'s Opp'n at 8.  An individual is legally incompetent if he or she is "incapable of handling [his or her] own affairs or unable to function in society." *Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) (quoting *Hendel v. World Plan Executive Council*, 705 A.2d 656 (D.C. 1997)).  The plaintiff fails to make any assertions from which the court could infer that Isaia Ivanof meets this definition.  Accordingly, the court grants the defendants' motion to dismiss the claims that the plaintiff purports to bring on behalf of Isaia Ivanof.

---

[2]     The plaintiff purports to submit a power of attorney signed by Ciprian Ivanof as an attachment to his opposition to the defendants' motion, *see* Pl.'s Opp'n, Attach.  But this document is not legally sufficient because it fails to comply substantially with D.C. Code § 21-2101(a) in that it is not notarized or dated and does not list the principal's social security number.  *See* D.C. Code § 21-2101(b).  Nor is the offer by the plaintiff, an inactive member of the Nebraska State Bar Association, to upgrade his bar membership to "active" to represent the Ivanofs availing, given that the plaintiff failed to meet the requirements for admission to practice in this court at the time the complaint was filed.  *See* LCvR. 83.2(c)-(d) (establishing the requirements for practice by non-members of this court's bar in court proceedings).

## C.  RICO Claims

The plaintiff also alleges that the defendants' conduct violated the RICO Act; specifically, 18 U.S.C. § 1962(c) and (d).  Compl. ¶ 32.  To prevail on his claim under § 1962(c), the plaintiff must allege as an element a "pattern of racketeering activity."  *See Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1224 (D.C. Cir. 1991).  A "pattern of racketeering activity," in turn, requires two or more instances of "racketeering activity" as defined in 18 U.S.C. § 1961(1).  18 U.S.C. § 1961(5).  To satisfy this requirement, the plaintiff asserts that the defendants committed robbery, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  But because none of the alleged predicate acts can survive the defendants' motion to dismiss, the plaintiff's RICO claim fails.

To successfully establish that the defendants robbed him of his frequent flyer miles, the plaintiff must allege that the defendants took his property by threat or force.  *See* Model Penal Code § 222.1;[3] *see also Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 409-10 (2003) (relying on the Model Penal Code definition of a crime to determine whether it was properly alleged as a predicate act for RICO purposes).  Because he has made no such allegation, and the facts do not support such an inference, robbery cannot serve as a predicate act of the plaintiff's RICO claim.

Nor can the allegations of mail and wire fraud.  The provisions on which the plaintiff ostensibly relies proscribe the use of the mail and wire "in furtherance of 'any scheme or artifice

---

[3]  Section 222.1 of the Model Penal Code states: "A person is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or (c) commits or threatens immediately to commit any felony of the first or second degree.  An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."

to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Cleveland v. United States*, 531 U.S. 12, 15 (2000) (quoting 18 U.S.C. §§ 1341); *see also* 18 U.S.C. § 1343.  Although first-party reliance is not a necessary element of a civil RICO claim based on mail fraud, *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2139 (2008), a plaintiff claiming fraud as a predicate act must nonetheless allege "a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury" to satisfy the proximate cause requirement, *id*. at 2144.  The plaintiff asserts that the defendants engaged in an intentional scheme to defraud him by falsely telling him that they could not recover the TWA mileage that was lost when AA bought out TWA.  Compl. ¶ 34.  To make out the proximate cause element of a mail or wire fraud claim, the plaintiff would need to allege that the defendants obtained his property by means of deliberate misrepresentations.  *See Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1339 (S.D. Fla. 2008) (noting that with respect to a RICO claim, the requirements "that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, [] that such misrepresentation would have been relief [sic] upon by a reasonable person, [and] . . . that the plaintiff suffered injury as a result of such reliance" flow from the language of the mail and wire fraud statutes). The plaintiff does not assert, however, that he lost his frequent flyer mileage as a result of a deliberate misrepresentation by the defendants; rather, his fraud claim merely alleges that after his mileage was lost, the defendants falsely told him that it was not recoverable.  *See* Compl. ¶¶ 31-34.  Because the plaintiff makes no assertions from which to infer proximate cause, the allegations of mail and wire fraud fail to serve as predicate acts required for liability under § 1962(c).

In addition to alleging a violation of 18 U.S.C. § 1962(c), the plaintiff alleges a violation of 18 U.S.C. § 1962(d). Relief under subsection (d) is unavailable absent a violation of another subsection of § 1962. Subsection (d) merely renders it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [18 U.S.C. § 1962]." 18 U.S.C. § 1962(d). Therefore, because the plaintiff has failed to state a claim under § 1962(c), his claim under § 1962(d) fails as well. Accordingly, the court grants the defendants' motion to dismiss the plaintiff's RICO claims.

### D. Statute of Limitations for State Law Claims

The statute of limitations applicable to claims for the recovery of personal property, infliction of emotional distress and breach of contract is three years. D.C. Code § 12-301(2) (establishing the statute of limitations on claims to recover personal property); *Saunders v. Nemanti*, 580 A.2d 660, 665 (D.C. 1990) (intentional infliction of emotional distress claims); *Tolbert v. Nat'l Harmony Mem'l Park*, 520 F. Supp. 2d 209, 212 (D.D.C. 2007) (negligent infliction of emotional distress claims); D.C. Code § 12-301(7) (breach of contract claims). The defendants argue that the statute of limitations bars the plaintiff's tort claims because they accrued on November 1, 2004 at the latest, and the plaintiff filed his complaint more than three years later, on November 30, 2007. Defs.' Mot. at 13-14. The plaintiff, on the other hand, maintains that he attempted to file his complaint on January 19, 2006, and requests that the court "set the filing date" to that date. *See* Pl.'s Opp'n at 20; Pl.'s Mot.

The complaint demonstrates conclusively that the plaintiff discovered the defendants'

alleged wrongdoing no later than November 1, 2004.[4]  But it is also clear from the plaintiff's

motion that he attempted to file his complaint on January 19, 2006, before the statute of

limitations ran.  *See* Pl.'s Mot.  The Clerk of the Court date-stamped the complaint as received

on January 19, 2006.  *See id.*, Attach. 1 at 2.  Then, however, the court denied the plaintiff's

request to proceed *in forma pauperis* on January 27, 2006, the plaintiff moved for

reconsideration of the denial on February 27, 2006, and the court denied the motion for

reconsideration on September 22, 2007.  The plaintiff re-filed the complaint, with the filing fee,

on November 30, 2007.

Based on this procedural history, the court cannot conclude that the plaintiff's claims are

barred by the statute of limitations.  The statute of limitations was tolled during the time that the

plaintiff's request to proceed *in forma pauperis* and his motion for reconsideration were pending.

*Baker v. Henderson*, 150 F. Supp. 2d 17, 19 (D.D.C. 2001) (noting that the defendant conceded

that "the lodging of a request to proceed IFP tolls the limitations period until the court rules on

the plaintiff's request"); *see also Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 & 1053 n.2

(D.C. Cir. 1988) (tolling the statute of limitations while the plaintiff's motion to alter judgment

of dismissal was pending); *Barnes v. United States*, 2004 WL 2203456, at *5 & n.7 (D. Kan.

Sept. 27, 2004) (stating that "numerous courts have held in various contexts that submission of a

complaint for filing without the required filing fee or IFP application constitutes 'filing' for

purposes of the statute of limitations"), *rev'd on other grounds*, *Barnes v. United States*, 2005

WL 1525268 (10th Cir. June 29, 2005).  Therefore, the court rejects the defendants' assertion

---

[4]     Indeed, the cause of action likely accrued before November 1, 2004, based on the plaintiff's
assertion that AAdvantage first told him his mileage had not transferred over in response to an
email inquiry that he sent "[a] more than adequate number of months prior to Nov[ember] 1,
2004."  Compl. ¶ 28.

that the plaintiff's claims should be dismissed as untimely.  In accordance with this

determination, the court construes the plaintiff's "Motion Requesting that the Court Set the

Filing Date for this Complaint to January 19, 2006 When this Complaint Was Actually Filed

with the Court" as a request to toll the statute of limitations during the time that the *in forma*

*pauperis* application and the motion for reconsideration were pending, and grants that request.

### E.  Trover, Detinue, Replevin and Conversion

The plaintiff seeks either transfer of the TWA mileage to an AA mileage account, or the

maximum retail value of such mileage, under the law of trover, detinue, replevin or conversion.

Compl. ¶¶ 37, 46.  Trover, detinue, replevin and conversion are all causes of action concerning

the wrongful use or possession of personal property.  *See Pearson v. Dodd*, 410 F.2d 701, 706

(D.C. Cir. 1969) (describing trover as the ancient common law form of action that led to the

modern substantive tort theory of conversion)*; Fed. Fire Prot. Corp. v. J.A. Jones/Thompson*

*Builders*, 267 F. Supp. 2d 87, 92 n.3 (D.D.C. 2003) (defining conversion as "an intentional

exercise of dominion or control over a chattel . . . ."); D.C. Code § 16-3701 (defining replevin as

an action "brought to recover personal property to which the plaintiff is entitled"); D.C. Code §

28:2A-521(c) (codifying a right of detinue with respect to sales of goods).

Conversion and trover extend only to intangible rights identified by a tangible document

that is converted; "[t]hus a plaintiff may bring a suit for conversion of a promissory note, a

check, a bank book, or an insurance policy . . . but not for conversion of a debt, the good will of a

business or an idea." *Primedical, Inc. v. Allied Inv. Corp.*, 1994 WL 149139, at *7 (D.D.C. Mar.

31, 1994); *see also 3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 10 (D.D.C. 2008).

Here, the plaintiff's frequent flyer miles amounted to credit with the airline, and as such,

represented an intangible right that cannot be the subject of a conversion or trover claim under

D.C. law.  *See Primedical*, 1994 WL 149139, at *7.  Because frequent flyer miles cannot be

considered "personal property," the plaintiff's replevin claim also fails.  *See* D.C. Code § 16-

3701.  Finally, because this case does not involve the sale of goods, the right of detinue has no

application here.  *See* D.C. Code § 28:2A-521(c).  Accordingly, the court dismisses the plaintiff's

claims for trover, detinue, replevin and conversion.

### F.  Intentional Infliction of Emotional Distress

Count VI of the complaint alleges that the defendants committed intentional infliction of

emotional distress against the plaintiff.  Compl. ¶ 56.  In order for the defendants to be held liable

for intentional infliction of emotional distress, the plaintiff must show "(1) extreme and

outrageous conduct on the part of the defendant[s] which (2) intentionally or recklessly (3)

causes the plaintiff 'severe emotional distress.'"  *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d

1169,1171 (D.C. 1997) (quoting *District of Columbia v. Thompson*, 570 A.2d 277, 289-90 (D.C.

1990)).  Conduct qualifies as "extreme and outrageous" if it "exceeds all bounds of decency" and

can fairly be regarded as "atrocious and utterly intolerable in a civilized community."  *Crowley*,

691 A.2d at 1172 (quoting *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980)).  A plaintiff

may not recover under this tort simply because a defendant's conduct causes him or her mental

distress; he or she must allege more than "insults, indignities, threats, annoyances" or offensive

or unfair treatment.  *Crowley*, 691 A.2d at 1171-72.

As the plaintiff has made clear, he was upset and outraged by the conduct that gave rise to

the instant action.  But that is far from sufficient.  *See Waldon*, 415 A.2d at 1077 (citing

examples of successful intentional infliction of emotional distress claims).  "The common

elements in [successful intentional infliction of emotional distress claims] are deceit or falsity, a total lack of privilege, and such wantonness that it can be presumed that the defendant would foresee severe consequences; the outrageousness of the defendant's conduct is self-evident in each instance." *Id.* The defendants' conduct here does not even begin to approach the definition of extreme and outrageous that the courts have articulated. *See Crowley*, 691 A.2d at 1172. Accordingly, the plaintiff has failed to state a claim for intentional infliction of emotional distress.

### G.  Negligent Infliction of Emotional Distress

The plaintiff also alleges that the defendants committed negligent infliction of emotional distress. Compl. ¶ 59. The tort of negligent infliction of emotional distress is available to a plaintiff who is placed "in the zone of physical danger" and is "caused by defendant's negligence to fear for his or her own safety." *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990). Here, the plaintiff makes no allegation that the defendants' actions caused him any physical danger or placed him in fear for his own safety. *See generally* Compl.; *see also Nnadili v. Chevron, U.S.A., Inc.*, 435 F. Supp. 2d 93, 100 n.6 (D.D.C. 2006). Therefore, the negligent infliction of emotional distress claim necessarily fails.

### H.  Breach of Contract/Promissory Estoppel

The plaintiff's final claim is for breach of contract. Compl. ¶ 62. The defendants contend that the plaintiff has failed to allege the elements of either a valid, enforceable contract or the elements of a promissory estoppel claim. Defs.' Mot. at 19. The court agrees that the plaintiff has failed to state a claim for breach of contract, but concludes that the plaintiff may go

forward on his promissory estoppel claim.[5]

To prevail on his theory that the defendants breached an enforceable contract, the plaintiff must allege either that he and the defendants shared an agreement supported by consideration, *see Rinck v. Ass'n of Reserve City Bankers*, 676 A.2d 12, 16 (D.C. 1996), or that he was an intended third-party beneficiary of an agreement between the defendants and TWA, *see Monument Realty L.L.C. v. Wash. Metro. Area Transit Auth.*, 535 F. Supp. 60, 70 (D.D.C. 2008) (citing *W. Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979)). The plaintiff does not assert that, during his August 2001 conversation with the AAdvantage representative, he and the representative formed an agreement. Compl. ¶¶ 62-66. He merely asserts that the representative promised him that his TWA mileage would automatically be converted to AAdvantage mileage if he took no action. *Id.* ¶ 65. This promise might create a cause of action under the theory of promissory estoppel, as discussed below, but it does not support an inference that the plaintiff and the defendants formed an enforceable contract. *See Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147-48 (D.D.C. 2007) (holding that the plaintiff failed to allege breach of a valid and enforceable contract but stated a claim for promissory estoppel).

Nor can the plaintiff prevail on a third-party beneficiary theory. A third-party beneficiary may sue under the contract if the contracting parties intended the third party to benefit directly from the contract. *Monument Realty L.L.C.*, 535 A.2d at 70. In this case, plainly there was a contractual relationship between TWA and AA related to the 2001 buyout. But because the plaintiff makes no allegation that the airlines had an agreement to protect frequent flyers in

---

[5]     The plaintiff did not explicitly plead a promissory estoppel theory. But the court, mindful of its obligation in ruling on a 12(b)(6) motion to dismiss to "hold [*pro se* complaints] to less stringent standards than formal pleadings drafted by [practicing] lawyers," reads a promissory estoppel theory into the plaintiff's allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

general or the plaintiff in particular, he cannot enforce their contract as a third party beneficiary. Compl. ¶ 65; Pl.'s Opp'n at 31.  For the foregoing reasons, the court dismisses the plaintiff's complaint to the extent that it asserts a breach of contract claim.

A promissory estoppel claim, however, is available absent an express, enforceable contract.  A plaintiff claiming promissory estoppel under District of Columbia law must allege that (1) there was a promise, (2) the promise reasonably induced reliance on it, and (3) the promisee relied on the promise to his or her detriment.  *Simard v. Resolution Trust Corp.*, 639 A.2d 540, 552 (D.C. 1994).  In this case, the plaintiff alleges that an AAdvantage representative promised him that if he took no action, his TWA mileage would automatically be converted to AAdvantage mileage on or about November 1, 2001; that based on this assurance, the plaintiff elected not to convert his TWA frequent flyer mileage into AAdvantage mileage immediately; and that as a result of this decision, the plaintiff's TWA mileage was lost when it failed to convert into AAdvantage mileage.  Compl. ¶¶ 27, 65.  These assertions are sufficient to survive a motion to dismiss,[6] *see Osseiran*, 498 F. Supp. 2d at 148, and the court denies the defendants' motion as to the plaintiff's promissory estoppel claim.

---

[6]    The defendants correctly assert that to determine whether the plaintiff has suffered injury as required for a promissory estoppel claim, the court must imagine what would have occurred had the promise never been made.  Defs.' Mot. at 22-23.  In this case, the defendants maintain, had the promise never been made, the plaintiff's TWA mileage would have been lost, and therefore, the plaintiff suffered no injury.  *Id.*  But the defendants misconstrue the nature and the impact of the promise that the AAdvantage representative allegedly made to the plaintiff.  Had the plaintiff not been told that his TWA mileage would automatically be converted into AAdvantage mileage, he claims that he would have transferred the mileage over during his conversation with the AAdvantage representative.  Compl. ¶ 27.  Plainly, the plaintiff is worse off as a result of his alleged reliance on the promise that the mileage would automatically transfer over.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants'

motion to dismiss, and grants the plaintiff's motion to toll the statute of limitations.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th

day of September, 2008.


RICARDO M. URBINA
United States District Judge